[Cite as *State v. Klingel*, 2017-Ohio-1183.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

STATE OF OHIO

    Appellee

    v.

EDWARD L. KLINGEL

    Appellant

C.A. No.    15CA010876

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    15CR091491

DECISION AND JOURNAL ENTRY

Dated: March 31, 2017

CARR, Presiding Judge.

{¶1} Appellant, Edward Klingel, appeals the judgment of the Lorain County Court of Common Pleas. This Court affirms.

I.

{¶2} This matter arises out of a series of threats that Klingel made toward police on his Facebook page. The Lorain County Grand Jury indicted Klingel on one count of inciting to violence, one count of retaliation, one count of telecommunications harassment, and one count of obstructing official business. The grand jury subsequently returned a supplemental indictment charging Klingel with one count of making terroristic threats. Klingel pleaded not guilty to all of the charges.

{¶3} The matter proceeded to a jury trial. Prior to opening statements, the State dismissed the inciting to violence charge. Thereafter the jury found Klingel guilty of telecommunications harassment and making terroristic threats. Klingel was found not guilty of

retaliation and obstructing official business. The trial court imposed a prison term of eighteen months.

{¶4} This Court dismissed Klingel's first attempt at an appeal due to the fact that the sentencing entry failed to resolve all of the charges in the indictment. The trial court issued a revised sentencing entry resolving all of the counts in the indictment and Klingel filed a timely notice of appeal.

{¶5} Now before this Court, Klingel raises three assignments of error.

II.

## ASSIGNMENT OF ERROR I

THE VERDICTS FOR TELECOMMUNICATIONS HARRASSMENT AND MAKING TERRORISTIC THREAT[S], AS DEFINED BY THE COURT, IN COUNTS THREE AND FIVE WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶6} In his first assignment of error, Klingel argues that his convictions for telecommunications harassment and terroristic threats were not supported by sufficient evidence and were against the weight of the evidence. This Court disagrees.

{¶7} Klingel was convicted of terroristic threats in violation of R.C. 2909.23(A), which states:

No person shall threaten to commit or threaten to cause to be committed a specified offense when both of the following apply:

(1) The person makes the threat with purpose to do any of the following:

(a) Intimidate or coerce a civilian population;

(b) Influence the policy of any government by intimidation or coercion;

(c) Affect the conduct of any government by the threat of by the specified offense.

(2) As a result of the threat, the person causes a reasonable expectation or fear of the imminent commission of the specified offense.

"A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A). The term "threat" is not defined in the statute. Generally speaking, however, the term "threat" in the criminal context connotes "[a] communicated intent to inflict harm or loss on another * * *[.]" *Black's Law Dictionary* 1519 (8th Ed.2004). The term "terroristic threat" is understood to mean "[a] threat to commit any crime of violence with the purpose of * * * terrorizing another[.]" *Id.* When interpreting a different criminal statute, the Supreme Court defined "threat" as "'an expression of an intention to inflict evil, injury, or damage on another usu[ally] as retribution or punishment for something done or left undone.' * * * It connotes almost any expression of intent to do an act of harm against another person irrespective of whether that act is criminal." *State v. Cress*, 112 Ohio St.3d 72, 2006-Ohio-6501, ¶ 36, quoting *Webster's Third New International Dictionary* 2382 (1986) citing *State v. Moyer*, 87 W.Va. 137 (1920).

{¶8}     Klingel was also convicted of telecommunications harassment in violation of R.C. 2917.21(B), which states:

> (1) No person shall make or cause to be made a telecommunication, or permit a telecommunication to be made from a telecommunications device under the person's control, with purpose to abuse, threaten, or harass another person.

> (2) No person shall knowingly post a text or audio statement or an image on an internet web site or web page for the purpose of abusing, threatening, or harassing another person.

"A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist.

When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact." R.C. 2901.22(B). "Telecommunication" means "the origination, emission, dissemination, transmission, or reception of data, images, signals, sounds, or other intelligence or equivalence of intelligence of any nature over any communications system by any method, including, but not limited to, a fiber optic, electronic, magnetic, optical, digital, or analog method." R.C. 2913.01(X). "Telecommunications device" is defined as "any instrument, equipment, machine, or other device that facilitates telecommunication, including, but not limited to, a computer [and a] computer network[.]" R.C. 2913.01(Y).

**Sufficiency Challenge**

{¶9}    A review of the sufficiency of the State's evidence and the manifest weight of the evidence adduced at trial are separate and legally distinct determinations. *State v. Gulley*, 9th Dist. Summit No. 19600, 2000 WL 277908, *1 (Mar. 15, 2000). When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id*. at paragraph two of the syllabus.

{¶10} The State presented evidence at trial supporting the following narrative. Lorain police investigated Klingel in relation to possible criminal activity in 2014. While the investigation did not lead to any criminal charges, Detective Tabatha Angello, who spearheaded the investigation, felt that Klingel was "very aggressive" toward her while she was working on that case. Detective Angello explained that due to Klingel's aggressive manner, the police department took a precautionary measure of printing out his photograph and providing it to security. Detective Angello worked a side job as a security officer at a local store. While working her side job, she saw Klingel at the store on three or four different occasions.

{¶11} Klingel was Facebook friends with a woman named A.U. The two connected through a group on the social network. In March of 2015, using the messenger function on Facebook, Klingel and A.U. engaged in a bizarre series of conversations about a variety of topics. During those discussions, Klingel asked A.U. if she was ready to run away with him. In support of his overture, Klingel stated, "I'm serious we can get married and travel the world killing random people." When A.U. responded that she "would never kill a random[,]" Klingel responded, "Ok we can kill those we know[.]"

{¶12} On April 3, 2015, at 8:05 p.m., Klingel used the Facebook messenger function to tell A.U., "Look I tried I truly did now the time is running out the cop will walk out and I will shoot her at 9pm[.]" When A.U. questioned whether the police officer had done something involving Klingel's daughter, he responded, "She is a cop they all will die[.] Everyone that stands in my way will die[.]" Detective Angello was the only woman working for the Lorain Police Department at that time. Klingel later said to A.U., "There are others with me we are taking some out at same time different places[.] * * * Seven teams of three[.]" Detective

Angello testified that, on the evening of April 3, 2015, she was working her side job and was scheduled to get off work at 9:00 p.m.

{¶13} Later that evening, Klingel posted a status update on his own Facebook page that stated, "This is to any law enforcement agent looking at my page we will not back down we demand you to take off your badges your weapons you will comply or be compelled to comply." Klingel then posted a status update that stated, "Death to the police." Subsequently, Klingel posted a status update asking, "So who is down to kill some cops I want to arrange where we can all kill some at a certain time hit me up if you want in lets make a statement that they cannot do this shit anymore[.]" Klingel also posted several messages directed toward the Federal Bureau of Investigation wherein he asked for "help," gave a phone number, and suggested that communicating with him might help to save lives.

{¶14} A.U. was deeply concerned about Klingel's posts and she alerted the FBI. The FBI, in turn, contacted local law enforcement. Detective Morris of the Lorain police testified that he found Klingel's threats alarming given that Detective Angello was the only woman serving as an officer at the department at that time. Upon learning about the threats, the department took the extraordinary measure of asking Detective Angello to stay home and stationing an officer in a squad car outside her residence.

{¶15} Klingel focuses on the intent of his Facebook statements in raising sufficiency challenges to both of his convictions.

{¶16} With respect to his conviction for terroristic threats, Klingel argues that his statements were not threats but rather an expression of free speech. Klingel insists that the State never demonstrated an actual expression of intent and that his comments were merely "the ramblings of an angry and frustrated man[.]"

{¶17} This argument is without merit. While Klingel suggests that his comments did not constitute "true threats," the statute provides that "[i]t is not a defense to a charge of a violation of this section that the defendant did not have the intent or capability to commit the threatened specified offense or that the threat was not made to a person who was a subject of the threatened specified offense." R.C. 2909.23(B). "When addressing the issue of whether the state has met its burden under R.C. 2909.23(A), the question is not whether the threat is communicated to its subject. Rather, the question is whether the defendant uttered the threat for the purpose of, in this case, intimidating or coercing a civilian population or affecting the conduct of any government." *State v. Baughman*, 6th Dist. Lucas No. L-11-1045, 2012-Ohio-5327, ¶ 26. Here, Klingel did not merely engage in a public discourse about the police work in his community. Instead, he made very specific threats about taking part in a coordinated effort to murder police officers. Klingel knowingly stated that there would be repercussions if law enforcement did not "comply" with his will. In the midst of making these threats, he specified that his target was the only woman to serve as a police officer in the community where he resided, an officer with whom he had a personal history. This evidence, when construed in the light most favorable to the State, was sufficient to convict Klingel of making terroristic threats. *See Jenks*, 61 Ohio St.3d at 279.

{¶18} In regard to his conviction for telecommunications harassment, Klingel stresses that his comments were made in a private conversation to a friend on Facebook, not to another person who served as a law enforcement official. Klingel contends that there is no way he could have known that his comments would reach Detective Angello or any other law enforcement official.

{¶19} Klingel's argument is without merit. While he made numerous comments to A.U. using the messenger function, he also posted several general status updates. In one status update, Klingel addressed his message to "any law enforcement agent looking at my page[.]" Klingel continued, "we will not back down[.] [W]e demand you take off your badges[,] your weapons[.] [Y]ou will comply or be compelled to comply[.]" A second status update stated, "Death to the police[.]" This chilling post was followed by another status update where Klingel solicited people who were "down to kill some cops * * * at a certain time[.]" Other posts were directed to the FBI. None of these statements were confined to the private conversation between Klingel and A.U. The language used by Klingel in his posts evidences the fact that Klingel made these telecommunications with the assumption that law enforcement officials were looking at his page. Given the grave nature of the statements, it is readily apparent that Klingel acted with purpose to threaten the lives of law enforcement officials.

**Manifest Weight Challenge**

{¶20} A conviction that is supported by sufficient evidence may still be found to be against the manifest weight of the evidence. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997); *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12.

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). An

appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340.

**{¶21}** Klingel's manifest weight arguments strike a similar chord to his sufficiency challenges. Klingel stresses that the weight of the evidence supports the conclusion that he did not purposely threaten another individual. Klingel further argues that his statements came from a place of frustration and were so outlandish that they could not be taken seriously.

**{¶22}** After a careful review of the record, we cannot agree with Klingel's contention that his convictions resulted in a manifest miscarriage of justice. A.U. admitted during her testimony that her Facebook friendship with Klingel was insincere. A.U. never met Klingel in person and she was amused by the fact that he "would always act all crazy" in group chats. A.U. testified that she thought it would be funny to "infiltrate" what she described as Klingel's "cult" of friends and "[h]ave some fun" at Klingel's expense. The evidence presented at trial further revealed that Klingel's ongoing frustration with police stemmed, in part, from the uncertainty about the custody situation with his daughter and whether his daughter was safe. At one point, Klingel suggested to A.U. that his daughter had been kidnapped and replaced by a "pod person." While Klingel points to the context surrounding his Facebook activity in support of the proposition that his seemingly threatening comments were actually harmless, we are mindful that the jury had an opportunity to evaluate this evidence, and the jury was in the best position to assess the credibility of the evidence presented by the parties at trial. *State v. Bulls*, 9th Dist. Summit No. 27029, 2015-Ohio-276, ¶ 24. Moreover, though some of Klingel's comments could arguably be construed as preposterous online banter, other comments evidenced a tangible desire to harass and threaten particular law enforcement officials. Given the grave nature of Klingel's threating statements, combined with the alarming level of specificity, we cannot conclude that

this is the exceptional case where the jury lost its way in convicting Klingel of making terroristic threats and telecommunications harassment. *See Otten*, 33 Ohio App.3d at 340.

**{¶23}** The first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO FILE A PRETIAL MOTION TO DISMISS SUPPLEMENTAL COUNT FIVE, MAKING TERRORISTIC THREAT, [R.C.] 2909.23, AS UNCONSTITUTIONAL UNDER THE FIRST AND FOURTEENTH AMENDMENTS.

**{¶24}** In his second assignment of error, Klingel contends that trial counsel rendered ineffective assistance by failing to file a pretrial motion to dismiss the charge of terroristic threats. Specifically, Klingel maintains that trial counsel should have filed a pretrial motion asserting that his statements on Facebook were protected by the First Amendment of the United States Constitution. This Court disagrees.

**{¶25}** In order to prevail on a claim of ineffective assistance of counsel, Klingel must show that "counsel's performance fell below an objective standard of reasonableness and that prejudice arose from counsel's performance." *State v. Reynolds*, 80 Ohio St.3d 670, 674 (1998), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland* at 686. Thus, a two-prong test is necessary to examine such claims. First, Klingel must show that counsel's performance was objectively deficient by producing evidence that counsel acted unreasonably. *State v. Keith*, 79 Ohio St.3d 514, 534 (1997), citing *Strickland*, 466 U.S. at 687. Second, Klingel must demonstrate that but for counsel's errors, there is a reasonable probability that the results of the trial would have been different. *Keith*, 79 Ohio St.3d at 534.

{¶26} Klingel has not demonstrated that trial counsel acted unreasonably. Klingel's argument is predicated on the notion that trial counsel should have filed a pretrial motion to dismiss. While Klingel does not explicitly couch his argument in terms of an "as applied" challenge to the constitutionality of R.C. 2909.23, the argument he makes on appeal is entirely dependent on the evidence presented at trial. In arguing that his comments were protected by the First Amendment, Klingel references his "private conversation" with A.U., his public status updates, as well as the way that the Lorain police reacted to his comments. Given that Klingel's position hinges on evidence that was presented at trial, he cannot prevail on his assertion that trial counsel's performance fell below an objective standard of reasonableness because he failed to raise this issue in a pretrial motion.

{¶27} The second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT FAILED TO INSTRUCT THE JURY ON [R.C.] 2909.23(A)(2), A NECESSARY PART OF THE CHARGE OF MAKING TERRORISTIC THREAT.

{¶28} In his final assignment of error, Klingel offers a succinct plain error argument. Klingel contends that the trial court committed plain error by failing to instruct the jury on a necessary part of the charge of making a terroristic threat. This Court disagrees.

{¶29} Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." To constitute plain error, the error must be obvious and have a substantial adverse impact on both the integrity of, and the public's confidence in, the judicial proceedings. *State v. Tichon*, 102 Ohio App.3d 758, 767 (9th Dist.1995). A reviewing court must take notice of plain error only with the utmost caution, and only then to prevent a manifest miscarriage of justice. *State v. Bray*, 9th Dist.

Lorain No. 03CA008241, 2004-Ohio-1067, ¶ 12. This Court may not reverse the judgment of the trial court on the basis of plain error, unless appellant has established that the outcome of trial clearly would have been different but for the alleged error. *State v. Kobelka*, 9th Dist. Lorain No. 01CA007808, 2001 WL 1379440, *2 (Nov. 7, 2001), citing *State v. Waddell*, 75 Ohio St.3d 163, 166 (1996).

{¶30} Klingel contends that while the trial court instructed the trial court on R.C. 2909.23(A)(1), it failed to instruct the jury on R.C. 2909.23(A)(2). Though Klingel did not object, he maintains that because the State must prove both R.C. 2909.23(A)(1) and (2) in order to obtain a conviction, this alleged omission by the trial court constituted plain error.

{¶31} As noted above, R.C. 2909.23 states:

(A) No person shall threaten to commit or threaten to cause to be committed a specified offense when both of the following apply:

(1) The person makes the threat with purpose to do any of the following:

(a) Intimidate or coerce a civilian population;

(b) Influence the policy of any government by intimidation or coercion;

(c) Affect the conduct of any government by the threat of by the specified offense.

(2) As a result of the threat, the person causes a reasonable expectation or fear of the imminent commission of the specified offense.

(B) It is not a defense to a charge of a violation of this section that the defendant did not have the intent or capability to commit the threatened specified offense or that the threat was not made to a person who was a subject of the threatened specified offense.

{¶32} Klingel's plain error argument is without merit. While the trial court's jury instruction on terroristic threats included the language in R.C. 2909.23(A)(1) and (B), the trial court omitted much of the language in R.C. 2909.23(A)(2). The trial court did stress that causation was an essential element of the offense, and it specified that to "cause" is an act

"which in a natural and continuous sequence directly influences the policy or affects the conduct of government, and without which it would not have occurred." We are mindful that the "[f]ailure of a trial court to separately and specifically instruct the jury on every essential element of each crime with which an accused is charged does not per se constitute plain error under Crim.R. 52(B)." *State v. Adams*, 62 Ohio St.2d 151 (1980), paragraph two of the syllabus. When a trial court fails to instruct the jury on an essential element of an offense, the reviewing court must examine the record and determine whether the defendant was substantially prejudiced by the omission, thereby resulting in a manifest miscarriage of justice. *Id.* at 154. In this case, we do not find plain error in the jury instruction as Klingel has failed to demonstrate that the trial court's omission resulted in a manifest miscarriage of justice. As chronicled above, the State presented ample evidence at trial that Klingel made explicit threats against Detective Angello. Given the depraved and detailed nature of Klingel's threats, a reasonable person would have had a well-founded fear that the commission of the attack was imminent. In light of the threats in this case, the police took precautionary measures to protect Detective Angello and she elected to stay home instead of working her private security job on the evening of April 4, 2015. Under these circumstances, we cannot say that Klingel has demonstrated that the result of the trial would have been different but for the imperfect jury instruction.

{¶33} Klingel's final assignment of error is overruled.

III.

{¶34} Klingel's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

 

 

DONNA J. CARR
FOR THE COURT


HENSAL, J.
SCHAFER, J.
CONCUR.


APPEARANCES:

NICHOLAS HANEK, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and NATASHA RUIZ GUERRIERI, Assistant Prosecuting Attorney, for Appellee.