[Cite as *State v. Steiner*, 2022-Ohio-2088.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| | | |
|---|---|---|
| STATE OF OHIO | | C.A. No.     21CA0045-M |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| JAMES T. STEINER | | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | | CASE No.     20CR0336 |

DECISION AND JOURNAL ENTRY

Dated: June 21, 2022

---

CALLAHAN, Judge.

{¶1}   Defendant-Appellant, James Steiner, appeals from the judgment of the Medina County Court of Common Pleas. This Court affirms.

I.

{¶2}   At the time these events occurred, T.Z. was a trustee for York Township as well as a full-time police officer for Medina Township. Mr. Steiner was a citizen of York Township. One afternoon, Mr. Steiner came to the trustees' office and spoke with T.Z. Mr. Steiner was displeased because the township had contracted with a new trash collection service provider, and he disapproved of the terms of the contract. During his conversation with T.Z., Mr. Steiner made several statements that concerned T.Z. Mr. Steiner talked about the ease with which he could make a bomb and how unfortunate it would be if one or more of the township's garbage trucks were bombed. He also referred to a trustee who had been found dead in Chippewa Lake and stated: "They may find another." When their conversation ended and Mr. Steiner left the building, T.Z.

called the Sheriff's Office to report the incident. He also requested patrol cars to monitor his residence and configured the alert notifications on his home security system to send him real-time notifications in the event someone came onto his property.

{¶3} As a result of the statements he made to T.Z., Mr. Steiner was indicted on one count of making terroristic threats in violation of R.C. 2909.23(A)(1)(c). The case proceeded to trial, at the conclusion of which a jury found Mr. Steiner guilty. The trial court sentenced Mr. Steiner to sixty days in jail and two years of community control.

{¶4} Mr. Steiner now appeals from his conviction and raises one assignment of error for this Court's review.

II.

**ASSIGNMENT OF ERROR**

> THE TRIAL COURT ERRED IN DENYING [MR. STEINER'S] MOTION FOR ACQUITTAL UNDER CRIM.R. 29(A), AS THE EVIDENCE WAS INSUFFICIENT TO SUPPORT CONVICTION.

{¶5} In his sole assignment of error, Mr. Steiner argues that the trial court erred when it denied his motion for acquittal because his conviction is based on insufficient evidence. According to Mr. Steiner, the State failed to prove that any threat he made to commit a specified offense created a reasonable expectation or fear that the commission of that offense was imminent. For the following reasons, this Court rejects his argument.

{¶6} This Court reviews the denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence. *State v. Frashuer*, 9th Dist. Summit No. 24769, 2010-Ohio-634, ¶ 33.

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether,

after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "In essence, sufficiency is a test of adequacy." *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

**{¶7}** The terroristic threats statute forbids any person from

threaten[ing] to commit or threaten[ing] to cause to be committed a specified offense when both of the following apply:

(1) The person makes the threat with purpose to * * * [a]ffect the conduct of any government by the threat or by the specified offense.

(2) As a result of the threat, the person causes a reasonable expectation or fear of the imminent commission of the specified offense.

R.C. 2909.23(A)(1)(c), (2). Because the Revised Code does not define the word "imminent," this Court looks to the plain language meaning of that word. *See State v. Klingel*, 9th Dist. Lorain No. 15CA010876, 2017-Ohio-1183, ¶ 7 (relying on plain language to define the word "threat" within the meaning of the terroristic threats statute). ""Imminent" has been defined as "ready to take place," "near at hand," "impending," "hanging threateningly over one's head," or "menacingly near."" *B.C. v. A.S.*, 9th Dist. Medina No. 13CA0020-M, 2014-Ohio-1326, ¶ 21, quoting *State v. McKinney*, 9th Dist. Summit No. 24430, 2009-Ohio-2225, ¶ 11, quoting *State v. Tackett*, 4th Dist. Jackson No. 04CA12, 2005-Ohio-1437, ¶ 14. *See also* Imminent, *Black's Law Dictionary* (11th Ed.2019) (defining "imminent" as "threatening to occur immediately" or "[a]bout to take place"). Thus, under R.C. 2909.23(A)(2), the State must show that a defendant, by means of his threat, caused a reasonable expectation or fear that a specified offense was ready to take place or about to be committed.

**{¶8}** As an initial matter, this Court notes that Mr. Steiner relies on evidence presented by the State as well as evidence presented by him in support of his assignment of error. Because

he challenges the trial court's denial of his Crim.R. 29 motion for acquittal, however, "this Court's review [is] limited to the evidence presented during the State's case in chief." *State v. Sutton*, 9th Dist. Medina No. 18CA0057-M, 2020-Ohio-2878, ¶ 14. Insofar as Mr. Steiner relies on testimony he elicited after the State rested its case, this Court cannot consider that evidence in ruling on his assignment of error. *Id.*

{¶9} T.Z. testified that he was conducting business at the office he shared with his fellow trustees when Mr. Steiner arrived and asked to speak with him. At the time, the only other person in the building was the township's zoning inspector. T.Z. testified that the zoning inspector was present for his entire conversation with Mr. Steiner and, once Mr. Steiner left, the zoning inspector was able to provide him with Mr. Steiner's name.

{¶10} T.Z. testified that Mr. Steiner wanted to speak with him about his trash collection service. The township had recently contracted with a new provider, and each non-exempt household was required to pay a monthly fee for the new service. T.Z. testified that Mr. Steiner was unhappy with the provider the township had selected, the terms of its contract with the provider, and the monthly fee he would have to pay for the service.

{¶11} T.Z. stated that, during his conversation with Mr. Steiner, Mr. Steiner made several statements that concerned him and made him feel as if he were being threatened. Mr. Steiner said, "'You know they found one trustee dead in Chippewa Lake. They may find another.'" He also "talked about blowing up a trash truck[,]" how he had military experience in the special forces, how easy it was to make a bomb, how he had the expertise to make a bomb, how expensive trash trucks were, and how upsetting it would be if someone "blew up a trash truck." Additionally, Mr. Steiner stated, "'God forbid someone blows one of those trucks up when there's a person in it but it's not that hard, it really isn't[.]'" When T.Z. informed Mr. Steiner that many of his statements

could be perceived as threats, Mr. Steiner stated: "'Yeah, I know that. You know, why do you think I'm doing this[?]"

{¶12} T.Z. acknowledged that, during their conversation, Mr. Steiner never yelled at him or invaded his personal space. He testified that he believed Mr. Steiner was venting his feelings at some points, but also that he thought Mr. Steiner was saying certain things to "invoke some fear that we should be doing some changes[.]" He testified that Mr. Steiner's body language suggested he was not just being careless with his words. Specifically, T.Z. described how Mr. Steiner was very focused on him as he spoke, how his stare was "direct, kind of like piercing," and how he appeared very stern. T.Z. also agreed that Mr. Steiner spoke a bit more quietly when he made the statements T.Z. perceived as threats.

{¶13} T.Z. testified that he began surreptitiously recording his conversation with Mr. Steiner when Mr. Steiner began making threats. The recording captured Mr. Steiner making several additional statements about blowing up garbage trucks, and the State played the recording at trial. T.Z. testified that he asked the zoning inspector for Mr. Steiner's name as soon as Mr. Steiner left the building because he was concerned for himself and the township. He indicated that he had no idea exactly what Mr. Steiner might do, but that he took his statements to mean Mr. Steiner was "going to do something." Before leaving the trustees' office, T.Z. called the Sheriff's Office and reported the incident. He requested that patrol cars monitor his home that evening and, either that same day or the next day, he configured the real-time alert notifications on his home security cameras to notify him whenever someone came onto his property. T.Z. testified that he took the foregoing actions as a direct result of his conversation with Mr. Steiner.

{¶14} Mr. Steiner argues that, while the statements he made to T.Z. were ill-advised, no reasonable person would have believed there was an imminent danger of him acting on those

statements. He notes that he was 75 years old at the time he made those statements, he never yelled or made any threatening gestures, and there was a dearth of evidence indicating that T.Z. or the Sheriff's Office took his alleged threats seriously. According to Mr. Steiner, the Sheriff's Office expended minimal time investigating the matter, and the evidence showed that neither T.Z., nor the Sheriff's Office ever communicated his alleged threats to the other trustees or the trash collection service provider.

{¶15} Before turning to the merits of Mr. Steiner's argument, this Court pauses to address the scope of its review. First, we note that portions of Mr. Steiner's argument rely on evidence he introduced during his own case-in-chief. He repeatedly cites to testimony he elicited from the deputy who responded to T.Z.'s call. Mr. Steiner called the deputy as a defense witness, however, so the deputy's testimony was introduced after the State rested its case. This Court cannot consider that evidence because Mr. Steiner has appealed from the trial court's denial of his motion for acquittal. *See Sutton*, 2020-Ohio-2878, at ¶ 14. Second and relatedly, we note that Mr. Steiner has not argued that his conviction is against the manifest weight of the evidence. To the extent he suggests that the State's case strains credulity or is unpersuasive, those arguments are not properly before us. A sufficiency challenge tests only the State's burden of production. *State v. Soucek*, 9th Dist. Lorain No. 17CA011226, 2018-Ohio-3834, ¶ 4. Thus, in reviewing Mr. Steiner's argument, this Court must view the evidence in a light most favorable to the State. *See Jenks*, 61 Ohio St.3d 259 at paragraph two of the syllabus.

{¶16} Mr. Steiner has not argued that his statements did not amount to threats or that he did not make those statements for the purpose of affecting the conduct of the township or its trustees. *See* R.C. 2909.23(A)(1)(c). His argument is strictly that there was no evidence he caused a reasonable expectation or fear of his "imminent commission" of the specified offenses he

threatened to commit. *See* R.C. 2909.23(A)(2). Albeit in the context of the domestic violence statute, "[t]his Court has recognized that both the totality of the circumstances, as well as the victim's state of mind, are relevant to the determination that [a] threat of harm was imminent." *Chafin v. Chafin*, 9th Dist. Lorain No. 09CA009721, 2010-Ohio-3939, ¶ 22. We also have recognized that "'the fact that the victim went to the police may serve as evidence that demonstrates the victim's belief that [] harm was imminent.'" *Morris v. Morris*, 9th Dist. Summit No. 24664, 2009-Ohio-5164, ¶ 22, quoting *Tackett*, 2005-Ohio-1437, at ¶ 15.

{¶17} Viewing the evidence in a light most favorable to the State, a rational trier of fact could have concluded that the State proved, beyond a reasonable doubt, that Mr. Steiner, by means of his threats, caused a reasonable expectation or fear that a specified offense was ready to take place or about to be committed. *See* R.C. 2909.23(A)(2). Mr. Steiner repeatedly talked about blowing up garbage trucks and did so in the context of indicating that he had specialized military training. He also referenced a trustee whose body had been found in a lake and, fully aware that T.Z. was a trustee, told him, "They may find another." Further, when T.Z. gave Mr. Steiner a chance to retract his statements by indicating that they could be perceived as threats, Mr. Steiner acknowledged their threatening nature and stated, "You know, why do you think I'm doing this[?]" *See State v. Hansen*, 3d Dist. Seneca No. 13-12-42, 2013-Ohio-1735, ¶ 50 (noting that defendant "never backed down from her initial threats, even when given the opportunity to do so[.]"). His threats were specific and not conditioned upon the occurrence of any prerequisite. *See Wohleber v. Wohleber*, 9th Dist. Lorain No. 10CA009924, 2011-Ohio-6696, ¶ 19. *Compare Bargar v. Kirby*, 12th Dist. Butler No. CA2010-12-334, 2011-Ohio-4904, ¶ 21. They also caused T.Z. to take several measures to protect himself, including calling the police, requesting patrol cars at his house, and setting up the alert notifications on his home security system. *See J.D. v. G.D.*, 9th Dist.

Medina No. 18CA0050-M, 2019-Ohio-4391, ¶ 15-17; *Klingel*, 2017-Ohio-1183, at ¶ 32. The fact that Mr. Steiner may not have intended to commit his threatened offenses is inapposite, as a defendant may not defend against a charge of making terroristic threats on the basis that he "did not have the intent or capability to commit the threatened specified offense * * *." R.C. 2909.23(B). Upon review of the narrow issue presented herein, this Court concludes that the State set forth evidence upon which a rational trier of fact could have found Mr. Steiner guilty of making terroristic threats. Consequently, Mr. Steiner's sole assignment of error is overruled.

III.

{¶18} Mr. Steiner's sole assignment of error is overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____

LYNNE S. CALLAHAN
FOR THE COURT

TEODOSIO, P. J.
CONCURS.

CARR, J.
DISSENTING.

{¶19} While I agree that Steiner made a number of troubling comments during his conversation with T.Z., I respectfully dissent as I do not believe that those comments rose to the level of terroristic threats.

{¶20} In order to sustain a conviction in this matter, the State was required to prove that Steiner made a threat that "cause[d] a reasonable expectation or fear of the *imminent* commission of the specified offense." (Emphasis added.) R.C. 2909.23(A)(2). As noted by the majority, this Court has defined the term "[i]mminent" as "ready to take place," "near at hand," "impending," "hanging threateningly over one's head," or "menacingly near." *B.C. v. A.S.*, 9th Dist. Medina No. 13CA0020-M, 2014-Ohio-1326, ¶ 21, quoting *State v. McKinney*, 9th Dist. Summit No. 24430, 2009-Ohio-2225, ¶ 11, quoting *State v. Tackett*, 4th Dist. Jackson No. 04CA12, 2005-Ohio-1437, ¶ 14.

{¶21} In *State v. Klingel*, 9th Dist. Lorain No. 15CA010876, 2017-Ohio-1183, this Court confronted a scenario where a defendant made a number of threating comments toward police on Facebook. In concluding that the State had demonstrated that the comments constituted terroristic threats, this Court stressed that the comments surpassed the realm of mere public discourse when the defendant "made very specific threats about taking part in a coordinated effort to murder police officers." *Klingel* at ¶ 17. The man identified a specific police officer with whom he had a personal

history and indicated that there would be repercussions if police did not "comply" with his demands. *Id*.

**{¶22}** Here, I do not think that the State demonstrated that Steiner caused a reasonable expectation or fear of the imminent commission of a specified offense. *See* R.C. 2909.23(A)(2). The majority places particular emphasis on the portion of the exchange where T.Z. informed Steiner that some of his statements could be construed as threats. A review of the recording reveals that Steiner's initial response was, "Oh no, no, no, * * * I'm just telling you I do have the expertise." When T.Z. began to tell Steiner that, while Steiner might not realize it, the reference to finding a body in Chippewa Lake was inappropriate, Steiner interjected and said, "No kidding, that's why I'm doing it." Immediately thereafter, however, Steiner indicated that there were people in the township who were a lot more "hothead[ed]" than him. Steiner later highlighted his advanced age and suggested that he generally tried to "stay out of this bulls***." As the conversation drew to a close, Steiner indicated that he "love[d] venting." T.Z. responded that he had no problem listening to venting. T.Z. indicated that he becomes discouraged when people "yell and get mad" but that Steiner did not yell and get mad as much as other people.

**{¶23}** Under these circumstances, I do not believe that Steiner caused a reasonable expectation or fear that the commission of a specified offense was menacingly near. Notably, while questions posed by the jury are not relevant to this Court's review of the sufficiency of the evidence, I find it telling that the jury inquired as to whether it could consider other charges. Although Steiner undoubtedly made a number of disconcerting comments, I would conclude that the State failed to demonstrate that Steiner's comments constituted threats that created a reasonable expectation or fear that the commission of a specified offense was imminent.

{¶24} Finally, I do not believe that the domestic violence caselaw cited in Paragraph 16 of the majority opinion is germane to the instant appeal. In the domestic violence context, the alleged victim is in a unique position to assess whether a threat of harm is imminent due to the history between the alleged victim and the defendant as well as the intimate nature of that relationship. I would refrain from applying this line of cases in circumstances such as this involving a conversation between a resident and a township trustee.

APPEARANCES:

RUSSELL S. BENSING, Attorney at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and VINCENT V. VIGLUICCI, Assistant Prosecuting Attorney, for Appellee.