[Cite as *State v. Steiner*, 2024-Ohio-2470.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| COUNTY OF MEDINA | )ss: | NINTH JUDICIAL DISTRICT |
| | ) | |

| STATE OF OHIO | C.A. No.    21CA0045-M |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| JAMES T. STEINER | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | CASE No.    20CR0336 |

DECISION AND JOURNAL ENTRY

Dated: June 28, 2024

SUTTON, Presiding Judge.

{¶1}    This matter is before the Court following our decision to reopen Defendant-Appellant James Steiner's appeal from his conviction in the Medina County Court of Common Pleas.  For the following reasons, we confirm our prior judgment.

I.

{¶2}    *In State v. Steiner*, 9th Dist. Medina No. 21CA0045-M, 2022-Ohio-2088, ¶ 2-3 ("*Steiner I*"), we set forth the relevant factual history in this matter as follows:

> At the time these events occurred, T.Z. was a trustee for York Township as well as a full-time police officer for Medina Township. Mr. Steiner was a citizen of York Township. One afternoon, Mr. Steiner came to the trustees' office and spoke with T.Z. Mr. Steiner was displeased because the township had contracted with a new trash collection service provider, and he disapproved of the terms of the contract. During his conversation with T.Z., Mr. Steiner made several statements that concerned T.Z. Mr. Steiner talked about the ease with which he could make a bomb and how unfortunate it would be if one or more of the township's garbage trucks were bombed. He also referred to a trustee who had been found dead in Chippewa Lake and stated: "They may find another." When their conversation ended and Mr. Steiner left the building, T.Z. called the Sheriff's Office to report the incident. He also requested patrol cars to monitor his residence and configured the alert

notifications on his home security system to send him real-time notifications in the event someone came onto his property.

As a result of the statements he made to T.Z., Mr. Steiner was indicted on one count of making terroristic threats in violation of R.C. 2909.23(A)(1)(c). The case proceeded to trial, at the conclusion of which a jury found Mr. Steiner guilty. The trial court sentenced Mr. Steiner to sixty days in jail and two years of community control.

{¶3} Mr. Steiner appealed from this Court's decision, raising a single assignment of error. *Id.* at ¶ 4. In his sole assignment of error, Mr. Steiner asserted the trial court erred in denying his Crim.R. 29 motion as there was insufficient evidence presented. *Id.* at ¶ 5. A majority of this Court disagreed and affirmed Mr. Steiner's conviction. *Id.* at ¶ 18.

{¶4} Mr. Steiner then filed an application to reopen his appeal pursuant to App.R. 26(B). In so doing, Mr. Steiner argued he received ineffective assistance of appellate counsel because his counsel failed to assign as error that his conviction is against the manifest weight of the evidence. This Court granted the application to reopen. This Court specifically ordered that, as required by App.R. 26(B)(7), Mr. Steiner's "brief shall address the argument that prior appellate counsel was ineffective." *State v. Steiner*, 9th Dist. Medina No. 21CA0045-M (Oct. 11, 2022).

{¶5} Mr. Steiner appealed, raising one assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

**THE TRIAL COURT ERRED IN ENTERING A CONVICTION THAT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

{¶6} In his sole assignment of error, Mr. Steiner argues his conviction is against the manifest weight of the evidence. However, because Mr. Steiner has "failed to address the key issue of ineffective assistance of appellate counsel, we cannot reach the merits of [this claim] and must instead overrule his assignment[] of error." *State v. Oliver*, 9th Dist. Summit No. 29535,

2023-Ohio-1353, ¶ 7, quoting *State v. Osborne*, 9th Dist. Lorain No. 17CA011208, 2022-Ohio-734, ¶ 5.

{**¶7**} "App.R. 26(B) establishes a two-stage procedure to adjudicate claims of ineffective assistance of appellate counsel." *State v. Leyh*, 166 Ohio St.3d 365, 2022-Ohio-292, ¶ 19. "The first stage involves a threshold showing for obtaining permission to file new appellate briefs." *Osborne* at ¶ 6, quoting 1993 Staff Notes to App.R. 26. At that stage, "[t]he burden is on the applicant to demonstrate a 'genuine issue' as to whether there is a 'colorable claim' of ineffective assistance of appellate counsel." *Leyh* at ¶ 21, quoting *State v. Spivey*, 84 Ohio St.3d 24, 25 (1998). If the appellate court finds the applicant has satisfied his burden and grants the application to reopen, the matter "proceeds to the second stage, where '[t]he case is then treated as if it were an initial direct appeal, with briefs and oral argument.'" *State v. Calhoun*, 9th Dist. Summit No. 29604, 2022-Ohio-4269, ¶ 7, quoting *State v. Simpson*, 164 Ohio St.3d 102, 2020-Ohio-6719, ¶ 13.

{**¶8**} At the second stage, an applicant must establish "the merits of both the direct appeal and the claim of ineffective assistance of appellate counsel." *Leyh* at ¶ 25. "[T]he prior appellate judgment may not be altered unless the applicant establishes at the second stage that the direct appeal was meritorious and failed because appellate counsel rendered ineffective assistance under the two-pronged [*Strickland v. Washington*, 466 U.S. 668 (1984)] standard." *Id.* at ¶ 24. "[W]hen an appellant fails to address ineffective assistance of appellate counsel in a brief filed in a reopened appeal, this Court must confirm our prior judgment." *Oliver* at ¶ 9, citing *Calhoun* at ¶ 9, citing *Osborne* at ¶ 9. *See also* App.R. 26(B)(9). "Although we recognize that [the appellant] will not be permitted to file a subsequent application to reopen to allege ineffective assistance of counsel,

* * * we must nonetheless apply [App.R. 26(B)] as written." *Oliver* at ¶ 9, quoting *Osborne* at ¶ 9.

{¶9} Similar to our precedent in *Oliver, Osborne*, and *Calhoun*, App.R. 26(B)(7) requires and this Court ordered Mr. Steiner to file an appellate brief addressing whether his appellate counsel was ineffective in handling his direct appeal. Although Mr. Steiner's brief sets forth one assignment of error regarding manifest weight of the evidence, Mr. Steiner has "neglected to address the issue of ineffective assistance of appellate counsel." *Oliver* at ¶ 10. Under these circumstances, this Court has no choice but to apply App.R. 26(B) as written and confirm our prior judgment in *Steiner I, supra. See Oliver* at ¶ 10; *Calhoun* at ¶ 10; *Osborne* at ¶ 9.

{¶10} Accordingly, Mr. Steiner's sole assignment of error is overruled.

{¶11} In *State v. Clark*, 9th Dist. Medina No. 20CA0020-M, this Court certified a conflict to the Supreme Court of Ohio with the Fourth District Court of Appeals' decision in *State v. Carver*, 4th Dist. Highland No. 19CA17, 2023-Ohio-2839, and the Eleventh District Court of Appeals' decision in *State v. Talley*, 11th Dist. Trumbull No. 2021-T-0044, 2023-Ohio-883. In so doing, this Court certified the following question to the Supreme Court of Ohio:

> In circumstances where an appellant's application for [reopening] is granted under App.R. 26(B)(5) on the grounds that there was a genuine issue as to whether the applicant was deprived of the effective assistance of counsel on appeal, but appellant then fails to separately address in their brief the claim that representation by prior appellate counsel was deficient and that the applicant was prejudiced by that deficiency as required by App.R. 26(B)(7), can the appellate court presume the appellant is arguing that appellate counsel was ineffective for failing to raise the arguments set forth in his new assignments of error, or must the court affirm its previous judgment due to the appellant's failure to comply with the explicit requirements set forth in App.R. 26(B)(7).

{¶12} Section 3(B)(4), Article IV of the Ohio Constitution provides that "[w]henever the judges of a court of appeals find that a judgment upon which they have agreed is in conflict with

a judgment pronounced upon the same question by any other court of appeals of the state, the judges shall certify the record of the case to the supreme court for review and final determination." The Ohio Supreme Court set forth three requirements which must be met in order to certify a case:

> First, the certifying court must find that its judgment is in conflict with the judgment of a court of appeals of another district and the asserted conflict must be "upon the same question." Second, the alleged conflict must be on a rule of law-not facts. Third, the journal entry or opinion of the certifying court must clearly set forth that rule of law which the certifying court contends is in conflict with the judgment on the same question by other district courts of appeals.

*Whitelock v. Gilbane Bldg. Co*., 66 Ohio St.3d 594, 596 (1993).

**{¶13}** As we did in *Clark*, *supra*, we find that our judgment in this appeal is in conflict with the decisions of the Fourth and Eleventh District Courts of Appeal. We therefore, sua sponte, certify a conflict to the Supreme Court of Ohio, pursuant to Article IV, Section 3(B)(4), of the Ohio Constitution, on the same issue certified in *Clark*, *supra*, and set forth above.

III.

**{¶14}** Mr. Steiner's assignment of error is overruled. Pursuant to App.R. 26(B), this Court confirms our prior judgment in *Steiner I*. Consistent with that decision, the judgment of the Medina County Court of Common Pleas is affirmed. Further, we hereby certify a conflict to the Supreme Court of Ohio on the question set forth above. The parties are directed to Sup.R.Prac. 8.01 for instructions on how to proceed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

 

BETTY SUTTON
FOR THE COURT

 

HENSAL, J.
<u>CONCURS.</u>

CARR, J.
<u>DISSENTING.</u>

{¶15} Although I agree with the majority that this case should be certified to the Supreme Court as being in conflict with cases from other districts, for the reasons I articulated in my dissent in *State v. Clark*, 9th Dist. Medina No. 20CA0020-M, 2023-Ohio-4839, ¶ 12-20 (Carr, J., dissenting), I respectfully dissent from the judgment in this case.

{¶16} The matter before this Court is a prime example of the problematic nature of this Court's approach to reopened appeals. Here, prejudicial error is being overlooked because

Steiner's current appellate counsel failed to use the precise language this Court has deemed necessary in its reading of *State v. Leyh*, 166 Ohio St.3d 365, 2022-Ohio-292.

{¶17} I have consistently taken the position that Steiner's conviction should not be upheld on appeal. In Steiner's first appeal, I took the position that his conviction for terroristic threats was not supported by sufficient evidence. *See State v. Steiner*, 9th Dist. Medina No. 21CA0045-M, 2022-Ohio-2088, ¶ 19-24 (Carr, J., dissenting). Although the majority did not agree that the evidence presented was insufficient, it emphasized in its analysis that it was only reviewing Steiner's Crim.R. 29 motion, and not the weight of the evidence, as the latter was not raised as an assignment of error. *Id.* at ¶ 15. My position is, as I argued in my dissent in *Clark, supra*, that the issue of whether Steiner's conviction is supported by the weight of the evidence is properly before us now in this reopened appeal. Given that, I would reverse the judgment of the trial court.

{¶18} Two witnesses testified at trial, T.Z. for the State and Deputy Matthew Montgomery with the Medina County Sheriff's Office for the defense.

{¶19} T.Z. testified that, at the time of trial, he was a York Township Trustee and also worked full time for Medina Township as a police officer for the past 26 years. At the time of trial, his rank was that of sergeant.

{¶20} T.Z. stated that on March 26, 2020, he was at the fire department, as that was where the trustee office was located. Also present was the zoning inspector, who did not testify at trial. Steiner, who was in his mid-seventies at the time, came in and began inquiring about the trash contract that was recently enacted for the township and became a little agitated in doing so. Steiner was unhappy with terms of the trash contract the township had adopted. T.Z. described Steiner as very direct and his facial expressions as very serious. However, T.Z. also indicated that Steiner would go from being agitated to relaxed depending on what was being said. T.Z. testified that

Steiner threatened T.Z. several times. Steiner spoke about how a trustee's body was found in Chippewa Lake and about blowing up a trash truck. He also talked about shooting animals in his backyard, commented about his military experience in special forces, explained that it was really easy to make a bomb, and offered that he had the expertise to do it. While T.Z. was using his training and experience to attempt to deescalate the situation, at this point, T.Z. began recording the conversation. That recording was played for the jury and a transcript of the recording was also made an exhibit.

{¶21} The recording reflects some comments by Steiner that could be viewed as inappropriate. T.Z. informed Steiner that some of his statements could be construed as threats. Steiner responded with, "Oh no, no, no, * * * I'm just telling you I do have the expertise." Steiner also acknowledged that his comments about finding a body in Chippewa Lake were inappropriate but noted that there were people in the township who were much more hot-headed than he was. Steiner later highlighted his advanced age and his general desire to avoid nonsense. As the conversation drew to a close, Steiner commented about loving to vent and T.Z. told Steiner that T.Z. did not mind listening to venting but gets discouraged when people come in and yell. T.Z. then told Steiner that Steiner had not gotten as upset as some people. Steiner thanked T.Z., and the encounter ended on a cordial note, as Steiner and T.Z. shook hands before Steiner left. T.Z. then asked the zoning inspector what Steiner's name was, and the zoning inspector told him.

{¶22} T.Z. indicated that, during his interaction with Steiner, he just wanted to get Steiner out of the office. Thus, T.Z. just tried to answer Steiner's questions hoping that would lead to Steiner leaving. T.Z. testified that he had never before had an experience like the one with Steiner. However, other people, unlike Steiner, had actually yelled at T.Z. in the past.

{¶23} After Steiner left, within a minute or two, T.Z. called the sheriff's office to report the incident. The office had Deputy Montgomery call T.Z. and he informed Deputy Montgomery what had occurred. T.Z. also asked the sheriff's office to put an extra patrol on his house. T.Z. indicated that Steiner's comments made him very concerned. While T.Z. already had security cameras at his house, after the incident with Steiner, T.Z. set up this system to notify him when someone came onto the property.

{¶24} On cross-examination, T.Z. agreed that Steiner did not directly threaten T.Z., never made threatening gestures, and remained seated. Nonetheless, T.Z. testified that he thought Steiner was considering blowing up a trash truck but did not think he was going to go do it right away. Thus, while T.Z. did not know what Steiner was going to do, he believed that he was going to do something. Steiner also did not get in T.Z.'s face, was not yelling, and was not angry. T.Z. acknowledged that he did not stop Steiner or ask him to leave when he started making threatening comments nor did T.Z. immediately call the police or ask the zoning inspector to call the police. T.Z. also did not arrest Steiner. Moreover, the zoning inspector, who was present for the whole conversation, did not decide to call the police on her own. Additionally, T.Z. did not ask Steiner for his name during the conversation or go outside to get Steiner's license plate information. T.Z. also did not warn the trash collection company about the threats.

{¶25} Deputy Montgomery provided testimony about the investigation. At the time of the events, he was a new deputy. Deputy Montgomery testified that on March 26, 2020, he received a phone call from T.Z. about his interaction with Steiner. Deputy Montgomery set up an extra patrol for T.Z.'s residence and attempted to make contact with Steiner. When Deputy Montgomery first called the Steiner residence, Steiner's wife thought it was a scam call and hung up on Deputy Montgomery. It was not until April 11, 2020, that Deputy Montgomery and his

supervisor went out to the Steiner residence to try to talk to Steiner; however, they were unable to make contact with him. Deputy Montgomery did not follow up after that.

**{¶26}** Deputy Montgomery testified that in the interim between the incident and going out to the Steiner house he was gathering more information about Steiner and ensuring he had the correct person and address. Deputy Montgomery indicated that he received statements from T.Z. and the zoning inspector around April 6, 2020. However, T.Z.'s statement is actually dated March 28, 2020. Deputy Montgomery agreed that he did not turn the matter over to a detective, attempt to get a search warrant for explosives, or warn the trash collection company of the potential threats.

**{¶27}** Clearly, the weight of the evidence does not support the guilty verdict on the charge before the jury of making terroristic threats.

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Id*. R.C. 2909.23(A)(2) requires that the evidence demonstrate that "a defendant, by means of his threat, caused a reasonable expectation or fear that a specified offense was ready to take place or about to be committed." *Steiner*, 2022-Ohio-2088, at ¶ 7.

**{¶28}** Here, undoubtedly Steiner made several very inappropriate comments that could be viewed as threatening in nature. However, the actions taken by those directly involved do not support that those comments caused those individuals to fear that Steiner was about to commit aggravated arson, arson, murder, or felonious assault. T.Z. was concerned that Steiner was going to do something and thought Steiner was *considering* blowing up a trash truck, but the totality of

the evidence does not support that T.Z. expected that any of the listed offenses was about to take place. T.Z. did not take immediate action while Steiner was making the comments; T.Z. could have asked Steiner to leave or could have called 911 while Steiner was still in the building. Additionally, T.Z.'s witness statement is dated two days after the incident, also tending to support that T.Z. was not concerned that Steiner posed an immediate danger.

{¶29} Deputy Montgomery's actions likewise do not support that law enforcement perceived Steiner to pose an immediate threat. Over two weeks passed before Deputy Montgomery sought to try to speak with Steiner at his house. Moreover, when that attempt failed, Deputy Montgomery did not take further action to try to speak with Steiner. No warnings were issued to the trash collection company and no search warrants were pursued for Steiner's residence to see if Steiner had access to explosives.

{¶30} Further, while it cannot be considered as evidence, I find it telling that the jury posed a question during deliberations as to whether it could consider other charges.

{¶31} Because it would be a grave injustice to allow Steiner's conviction to stand under the circumstances, I respectfully dissent from the majority's refusal to address the merits of Steiner's argument. The record supports that the jury lost its way in finding Steiner guilty of the charged offense. *See Otten*, 33 Ohio App.3d at 340.

APPEARANCES:

ERIN R. FLANAGAN, Attorney at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, for Appellee.