NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-6719

THE STATE OF OHIO, APPELLEE, *v*. SIMPSON, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Simpson*, Slip Opinion No. 2020-Ohio-6719.]**

*App.R. 26(B)—Two-pronged standard articulated in* Strickland v. Washington*, adopted in Ohio in* State v. Reed*, applies to applications for reopening under App.R. 26(B)—Court of appeals' judgment affirmed.*

(No. 2019-1769—Submitted August 18, 2020—Decided December 18, 2020.)

APPEAL from the Court of Appeals for Butler County, No. CA2018-06-121.

_____

FRENCH, J.

{¶ 1} Appellant, Roger Simpson, asks this court to revisit the standard that Ohio courts of appeals must apply when considering App.R. 26(B) applications for reopening. He asks that we require appellate courts to apply the factors set out in *Mapes v. Tate*, 388 F.3d 187, 191 (6th Cir.2004) ("*Mapes II*"), when they consider whether to grant an application for reopening. We decline to do so. We reaffirm that the standard set out in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct.

2052, 80 L.Ed.2d 674 (1984), which we adopted in *State v. Reed*, 74 Ohio St.3d 534, 535, 660 N.E.2d 456 (1996), applies to applications for reopening under App.R. 26(B). We reaffirm that courts of appeals should grant an application for reopening if the defendant shows a genuine issue as to whether he has a colorable claim that his appellate counsel's performance was deficient and that the deficient performance caused him prejudice. Because the Twelfth District Court of Appeals applied the correct standard when it considered Simpson's App.R. 26(B) application for reopening, we affirm its judgment.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Simpson was charged with 23 felonies related to the rape of a woman in Oxford, Ohio, in 2017. He was charged with ten counts of rape, five counts of sexual battery, two counts of kidnapping, four counts of complicity to rape, and two counts of complicity to sexual battery. Two other men were also indicted. Codefendant Elijah Mincy was charged with 23 felony counts for his involvement in the rape, and codefendant Rodney Gibson II was charged with 26 felony counts for his involvement.

{¶ 3} A jury found Simpson guilty on all charges. The trial court merged many of the counts. It sentenced him on five counts of rape, one count of kidnapping, and two counts of complicity to rape. The court imposed consecutive sentences on all the rape and kidnapping counts, for an aggregate total of 51 years. The court also sentenced Simpson to seven years on each of the complicity counts, but it ordered those sentences to run concurrently with the other sentences.

{¶ 4} After Simpson's trial, Gibson and Mincy accepted plea bargains. Gibson pleaded guilty to one count of complicity to kidnapping. He received a five-year sentence. Mincy pleaded guilty to one count of rape and one count of kidnapping. He received an eight-year sentence.

## A.  Direct Appeal

{¶ 5} Simpson appealed his convictions and sentences, raising two assignments of error.  First, Simpson argued that the trial court should have merged more counts.  Second, he argued that his trial counsel was ineffective for failing to cross-examine the state's expert witnesses, failing to allow Simpson to testify in his own defense, and failing to oppose the state's sentencing memorandum on allied offenses.  The court of appeals rejected both assignments of error.

## B.  Application for Reopening

{¶ 6} Simpson then filed an application to reopen his appeal under App.R. 26(B).  He argued that his original appellate counsel had failed to obtain his case file to review it for potential errors and that counsel had raised two errors that were meritless when she could have raised three additional errors that had merit: (1) the trial court's admission of out-of-court statements; (2) Simpson's aggregate 51-year prison term as compared to the aggregate eight-year and five-year terms his codefendants received; and (3) the trial court's failure to record a hearing on evidence protected by Ohio's rape-shield law or file the exhibit Simpson's counsel proffered containing that evidence.

{¶ 7} Simpson supported his application for reopening with an affidavit executed by his lead trial counsel, Don LeRoy.  LeRoy supported Simpson's claim that his original appellate counsel had never reviewed Simpson's case file, which LeRoy kept at his office.  LeRoy also represented that Simpson's counsel did not raise meritorious arguments on direct appeal.

{¶ 8} LeRoy addressed the items he believed should have been raised in Simpson's direct appeal.  LeRoy said that the proceedings concerning the state's argument that certain evidence was excluded by the rape-shield law occurred in chambers without a court reporter and that the docket does not contain an entry reflecting the court's adjudication of those proceedings.  He represented that he proffered an exhibit containing the evidence at issue but that his proffered exhibit

is not in the clerk's official file. LeRoy also summarized the contents of the proffered exhibit. Furthermore, LeRoy identified two issues that he felt Simpson's appellate counsel should have raised on direct appeal: the state's repeated use of codefendant Gibson's out-of-court statements and the disparity between the aggregate sentence Simpson received and the sentences his codefendants received.

{¶ 9} The court of appeals denied the application. It applied the *Strickland* standard and concluded that Simpson failed to meet either part of that test. The court considered each of the errors that Simpson argued his original appellate counsel should have raised. It determined that there was no indication that the trial court would have excluded the out-of-court statements as inadmissible hearsay had Simpson's trial counsel objected to their admission, because they were not offered for their truth but rather for their effect on the listener. Further, the court of appeals held that Simpson could not show that it would have sustained a challenge to his sentence, because the trial court "properly considered the relevant sentencing guidelines and requirements" and there was no indication that the trial court acted vindictively. Finally, the court held that Simpson failed to show that the evidence his trial counsel proffered during the in-chambers hearing was admissible under Ohio's rape-shield law.

{¶ 10} We accepted Simpson's appeal and his sole proposition of law:

> Appellate ineffectiveness is measured in the application and reopening by comparing the presented arguments on direct appeal with omitted ones, by applying the Sixth Circuit's *Mapes* factors to weigh the strengths, weaknesses, and viability of those omitted arguments, and by evaluating postconviction facts about appellate counsel's preparedness and tactics.

*See* 158 Ohio St.3d 1430, 2020-Ohio-748, 141 N.E.3d 236.

## II. ANALYSIS

{¶ 11} Indigent criminal defendants generally have a right to appellate counsel in their first appeal of right. *Coleman v. Thompson*, 501 U.S. 722, 755, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Like trial counsel, appellate counsel must provide reasonably effective assistance. *Id*., citing *Evitts v. Lucey*, 469 U.S. 387, 396, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985); *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052, 80 L.Ed.2d 674, citing *Trapnell v. United States*, 725 F.2d 149, 151-152 (2d Cir.1983).

### A. App.R. 26(B)

{¶ 12} App.R. 26(B) allows a criminal defendant to apply to reopen his direct appeal based on a claim that his appellate counsel was ineffective. It creates a two-step process. First, the applicant must apply to have his appeal reopened following the procedure set out in App.R. 26(B)(2) through (4). The initial application is limited to ten pages, and no oral argument is permitted. App.R. 26(B)(4). It must include a sworn statement explaining how appellate counsel's representation was deficient and how that deficiency "prejudicially affected the outcome of the appeal." App.R. 26(B)(2)(d). The application "shall be granted if there is a genuine issue as to whether the applicant was deprived of the effective assistance of counsel on appeal." App.R. 26(B)(5). We have said that the applicant must show that there is a " 'genuine issue' as to whether he has a 'colorable claim' of ineffective assistance of counsel on appeal." *State v. Spivey*, 84 Ohio St.3d 24, 25, 701 N.E.2d 696 (1998).

{¶ 13} If the application is granted, it proceeds to the second step. The case is then treated as if it were an initial direct appeal, with briefs and oral argument. App.R. 26(B)(7); *see* App.R. 21(A). Unlike an initial appeal, though, the court of appeals may order an evidentiary hearing if it determines one is necessary. App.R. 26(B)(8).

## B. A defendant must meet *Strickland*'s two-pronged standard to prevail on a claim of ineffective assistance of appellate counsel

{¶ 14} In *Reed*, 74 Ohio St.3d at 535, 660 N.E.2d 456, this court adopted the two-pronged analysis set out in *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052, 80 L.Ed.2d 674, for considering applications for reopening. Under that standard, an appellant must show that his appellate counsel's performance was deficient and that the deficient performance prejudiced him. *Strickland* at 687; *see Reed* at 535-536; *see also* App.R. 26(B)(9). Appellate counsel's performance must have been objectively unreasonable, and there must be a reasonable probability that the result of the appeal would have been different but for counsel's errors. *Strickland* at 688, 694; *see Reed* at 535. Under *Strickland*, a reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. *Strickland* at 694.

{¶ 15} Simpson now asks that we adopt a number of other factors for appellate courts to consider when deciding whether to grant an application for reopening. Those factors were first outlined in a federal-court opinion, *Mapes v. Coyle*, 171 F.3d 408, 427-428 (6th Cir.1999) ("*Mapes I*"). In that case, the Sixth Circuit considered whether the district court properly granted Mapes's petition for a writ of habeas corpus, barring the state from carrying out his death sentence, because Mapes's appellate counsel was ineffective for failing to raise certain errors on appeal. The Sixth Circuit recognized that *Strickland*'s two-pronged analysis applies to a claim alleging that appellate counsel was ineffective. *Mapes I* at 425. Applying that standard, the Sixth Circuit said that Mapes would not be able to show that he had been prejudiced during the guilt phase of his trial because there was overwhelming evidence that he was guilty. Appellate counsel's failure to raise errors related to the mitigation phase and the jury's death-sentence recommendation, though, was "almost inexplicable." *Id.* at 427. The court drew from other circuit courts and compiled a list of questions that it found helpful for

determining whether Mapes's appellate counsel performed reasonably competently despite failing to raise arguments concerning those phases of the proceedings:

(1) Were the omitted issues "significant and obvious"?

(2) Was there arguably contrary authority on the omitted issues?

(3) Were the omitted issues clearly stronger than those presented?

(4) Were the omitted issues objected to at trial?

(5) Were the trial court's rulings subject to deference on appeal?

(6) Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?

(7) What was appellate counsel's level of experience and expertise?

(8) Did the petitioner and appellate counsel meet and go over possible issues?

(9) Is there evidence that counsel reviewed all the facts?

(10) Were the omitted issues dealt with in other assignments of error?

(11) Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Id*. at 427-428. The court cautioned that its list is not exhaustive and must not be used to "produce a 'correct score.' " *Id*. at 428. The factors merely guide the consideration.

{¶ 16} Considering those factors, the Sixth Circuit concluded that there was a strong possibility that Mapes's appellate counsel was ineffective and there was a reasonable probability that Mapes was prejudiced. *Id.* at 429. The court remanded the matter to the district court for an evidentiary hearing to consider whether Mapes's appellate counsel was ineffective. On remand, the district court adopted the magistrate's recommendation to vacate Mapes's death sentence (unless the Ohio courts granted another review of Mapes's sentence within 90 days) because his appellate counsel was ineffective. When the case came before the Sixth Circuit on an appeal from that decision, the court referred to the 11 factors it outlined in *Mapes I*. *Mapes II*, 388 F.3d at 191. It then concluded that Mapes's appellate counsel was ineffective for failing to challenge the trial court's refusal to allow the jury to consider certain mitigating evidence. It affirmed the district court's judgment.

{¶ 17} Simpson argues that we should adopt the *Mapes* factors so that there is a standard against which his appellate counsel's performance can be evaluated and so that Ohio aligns with federal law to provide a predictable and uniform standard for ineffective-assistance-of-appellate-counsel claims. But there is already a predictable and uniform standard to evaluate appellate counsel's performance, and it is outlined in *Strickland*. And as we discuss below, both Ohio and federal courts have adopted *Strickland* as the standard for evaluating appellate counsel's performance. *See Reed*, 74 Ohio St.3d at 535, 660 N.E.2d 456; *Smith v. Robbins*, 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000).

{¶ 18} As we have stated, under *Strickland*, in order to prevail on a claim that counsel was ineffective, a criminal defendant must show (1) that his counsel's performance was deficient and (2) that that performance prejudiced him. *See Strickland*, 466 U.S. at 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. *Strickland* also established a standard for evaluating whether counsel's performance was deficient. In *Strickland*, the United States Supreme Court acknowledged that courts must be

highly deferential in reviewing counsel's performance. *Id.* at 689. It said that "the proper standard for attorney performance is that of reasonably effective assistance." *Id*. at 687. A defendant who claims his counsel was ineffective must show that, considering all the circumstances, his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *See id.* at 687-688. The court cautioned that "[m]ore specific guidelines" for counsel's performance "are not appropriate." *Id*. at 688. The court listed some generally accepted basic duties that "neither exhaustively define" counsel's obligations "nor form a checklist for judicial evaluation of attorney performance." *Id*. Those general duties include assisting the defendant, advocating for the defendant's cause, communicating with the defendant, and using the attorney's skill and knowledge to ensure a reliable adversarial process. *Id*. But still, the court recognized that it is not appropriate to develop a set list of factors for evaluating counsel's performance because "[n]o particular set of detailed rules for counsel's conduct can satisfactorily" account for all the variables that a court must consider. *Id*. at 688-689.

{¶ 19} Although *Strickland* involved a claim of ineffective assistance of trial counsel, both this court and the United States Supreme Court have recognized that the *Strickland* standard also applies to claims asserting ineffective assistance of appellate counsel. *See Smith* at 285 ("the proper standard for evaluating [a] claim that appellate counsel was ineffective * * * is that enunciated in *Strickland*"); *Reed*, 74 Ohio St.3d at 535, 660 N.E.2d 456. Contrary to appellant's assertion, Ohio law is, therefore, already aligned with federal law on the standard for evaluating appellate counsel's performance.

{¶ 20} As a final matter, we note that even the Sixth Circuit itself has not adopted the *Mapes* factors uniformly. *See, e.g.*, *Haliym v. Mitchell*, 492 F.3d 680, 694-696 (6th Cir.2007) (applying the *Strickland* standard alone, without mentioning the *Mapes* factors, and finding that appellate counsel was not

ineffective); *Ceasor v. Ocwieja*, 655 Fed.Appx. 263, 277-278 (6th Cir.2016) (applying the *Strickland* standard without mentioning the *Mapes* factors, finding that appellate counsel's performance was deficient, and remanding to the district court to determine the prejudice prong). Although the *Mapes* factors may provide helpful guidance for appellate courts as they evaluate appellate counsel's performance, mandating consideration of those factors is not appropriate.

{¶ 21} Today, we reaffirm that a defendant must show a genuine issue as to whether he has a colorable claim that his appellate counsel was ineffective in order to have his appeal reopened. The Twelfth District applied the correct standard when it reviewed Simpson's application for reopening and concluded that Simpson failed to show a genuine issue that he has a colorable claim of ineffective assistance of appellate counsel. We therefore affirm the decision of the Twelfth District.

### III. CONCLUSION

{¶ 22} Today, we reaffirm that the two-pronged standard articulated in *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052, 80 L.Ed.2d 674, applies to App.R. 26(B) applications for reopening. Courts of appeals should grant an application for reopening if the defendant shows a genuine issue that he has a colorable claim that his appellate counsel's performance was deficient and that he was prejudiced by the deficient performance. Appellate counsel's performance was deficient if, considering all the circumstances, it fell below an objective standard of reasonableness under prevailing professional norms. *Id.* at 688. The Twelfth District Court of Appeals applied this standard, and we affirm its judgment.

Judgment affirmed.

KENNEDY and DEWINE, JJ., concur.

O'CONNOR, C.J., concurs, with an opinion.

FISCHER, J., concurs, with an opinion.

DONNELLY, J., dissents, with an opinion joined by STEWART, J.

––––––––––––––––––

**O'CONNOR, C.J., concurring.**

{¶ 23} I agree with the majority's conclusion that the two-pronged standard articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), applies to App.R. 26(B) applications for reopening. I nevertheless write separately because I share the dissent's outrage at appellate counsel's performance in this case. Applying *Strickland*, I would conclude that appellant, Roger Simpson, presented a colorable claim that his appellate counsel's performance was deficient and that Simpson was prejudiced as a result. However, because Simpson challenged only the applicable standard to App.R. 26(B) applications and failed to challenge his appellate counsel's performance under *Strickland*, I can offer only an advisory assessment of counsel's performance.

{¶ 24} Applying the first prong of *Strickland*, I find it difficult to conceive of a more appropriate example of performance that falls below "an objective standard of reasonableness," *id.* at 688, than that of appellate counsel failing to even review the case file of a defendant who was convicted following a jury trial. *See also Storey v. Vasbinder*, 657 F.3d 372, 389 (6th Cir.2011) (Clay, J., dissenting) ("There is no scenario under which a complete failure to investigate a case or to review available discovery can be assumed to be reasoned trial strategy or otherwise excused."). In his affidavit, Simpson's lead trial counsel explained that he kept the case file at his home office and intended to discuss the case with appellate counsel once he provided her with the file. But appellate counsel never obtained, nor attempted to obtain, the file, meaning she never reviewed the bill-of-information, the counsel-only discovery, work product from experts and investigators, or trial counsel's work product. Nor did she ever discuss the issues in the case with trial counsel. As a result, appellate counsel was not aware of two issues that trial counsel believed had merit and should have been raised on direct appeal.

**{¶ 25}** More specifically, appellate counsel failed to raise on direct appeal a glaring issue regarding the disparity between Simpson's sentence and his codefendants' sentences. In contrast to Simpson's 51-year sentence, his codefendants received 8- and 5-year sentences. Despite similarities in both their conduct and the charges all three men faced, Simpson received a sentence more than six times longer than his codefendants' sentences. Paired with the fact that Simpson, unlike his codefendants, exercised his constitutional right to a jury trial, the relative severity of his sentence resembles a trial tax. This issue was clearly stronger than the merger issue raised in Simpson's direct appeal, especially when the state and Simpson's trial counsel had agreed as to the offenses that were allied for merger below. To me, appellate counsel's failures demonstrate at least a genuine issue as to whether Simpson has a colorable claim that his counsel's performance was deficient.

**{¶ 26}** Turning to the second prong of *Strickland*, appellate counsel's failures also demonstrate a reasonable probability that counsel's deficient performance prejudiced Simpson. *See Strickland*, 466 U.S. at 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. Because appellate counsel failed to raise the disproportionate-sentencing issue, the court of appeals could not address this significant issue in Simpson's direct appeal. Indeed, similar arguments involving disproportionate sentences and trial taxes have persuaded courts of appeals to reverse and remand for more appropriate sentences. *See State v. Moore*, 2012-Ohio-1958, 970 N.E.2d 1098 (8th Dist.) (defendant successfully contended that his sentence was disproportionate to that of his codefendant's and a punishment for exercising his constitutional right to trial); *State v. Beverly*, 2d Dist. Clark No. 2011-CA-64, 2013-Ohio-1365, *rev'd on other grounds*, 143 Ohio St.3d 258, 2015-Ohio-219, 37 N.E.3d 116 (concluding that the evidence in the record did not support the more than 50-year disparity between defendant's and codefendant's sentences). There is a reasonable probability that had appellate counsel raised this disproportionate-

sentencing issue, the court of appeals would have reversed Simpson's sentence and remanded for resentencing, carrying with it the potential of a reduced sentence. Accordingly, I would also conclude that a genuine issue exists as to whether Simpson has a colorable claim that he was prejudiced by his appellate counsel's deficient performance.

{¶ 27} While I believe Simpson demonstrated a colorable claim that his appellate counsel was ineffective under *Strickland*, and therefore, met his burden under App.R. 26(B) to reopen his appeal, I nevertheless join the majority opinion in light of the narrow scope of this appeal.

---

**FISCHER, J., concurring.**

{¶ 28} I concur with the majority opinion. The standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), is the appropriate standard by which appellate courts should review applications for reopening under App.R. 26(B). I write separately to emphasize that appellate courts, in analyzing the prejudice prong of *Strickland*, should look to determine whether, but for appellate counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different. Under longstanding Ohio law, a reasonable probability is a probability sufficient to undermine confidence in the outcome. *State v. Davis*, 159 Ohio St.3d 31, 2020-Ohio-309, 146 N.E.3d 560, ¶ 10; *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989); *Strickland* at 694. The analysis does not demand the certainty of success.

{¶ 29} I also write separately to express my concern with a matter that was raised in this appeal but that could not be fully considered due to the narrow scope of the issue before us. The Office of the Ohio Public Defender, in its amicus brief, identifies that review of applications for reopening under App.R. 26(B) has evolved from reviewing for genuine issues that could have been argued on appeal to

reviewing the merits of those issues. *See State v. Fain*, 188 Ohio App.3d 531, 2010-Ohio-2455, 936 N.E.2d 93, ¶ 34 (1st Dist.) (Cunningham, J., concurring in part and dissenting in part) (writing that the majority in that case, while correct in determining that a genuine issue existed, erred in deciding the merits of the ineffective-assistance-of-counsel claim based solely on the application for reopening rather than ordering briefing on the issue as is required under App.R. 26(B)(6)-(9)). While that issue is beyond the scope of this appeal, I agree that appellate courts are likely in need of further guidance from this court on that issue. Thus, moving forward, I would encourage my colleagues on this court to accept for review cases pertaining to applications to reopen an appeal under App.R. 26(B).

_____

**DONNELLY, J., dissenting.**

{¶ 30} In this case, appellant, Roger Simpson, invites us to supplement the two-part test enunciated in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), with the factors set forth in *Mapes v. Tate*, 388 F.3d 187, 191 (6th Cir.2004), when considering applications for reopening under App.R. 26(B). The majority opinion rejects this invitation; I would accept it because the *Mapes* factors provide enhanced guidance to courts that the more limited *Strickland* test does not.

{¶ 31} This case deserves meaningful review because appellate counsel below failed many of the factors listed in *Mapes* to determine whether "appellate counsel performed reasonably competently despite failing to raise arguments * * *," majority opinion at ¶ 15. According to Simpson's brief,

> Simpson's lead counsel kept the case file at his home office because he intended to discuss the issues with appellate counsel when he transferred the file to her. But appellate counsel only emailed once about the case, never obtained the file, and never had

a substantive discussion about the case. Which means appellate counsel never reviewed the bill-of-information, the discovery, the counsel-only discovery, the work product of experts and the investigator, and the notes.

{¶ 32} The brief also states:

> Appellate counsel failed to argue that Simpson's 51-year sentence was unsupported by the record, disproportionate with his co-defendants' sentences, and involved an unconstitutional trial tax. The discrepancy between Simpson's 51-year term and [codefendant Elijah] Mincy's and [codefendant Rodney] Gibson's 8- and 5-year terms was a significant and obvious issue—more so given that Simpson and Mincy committed the same acts, where each faced 23 counts, and therefore shared culpability and blameworthiness.

The majority opinion concludes that these deficiencies are basically irrelevant because Simpson was not prejudiced.

{¶ 33} Any appellate attorney in Ohio worth his or her salt would have recognized the vitality and importance of the disproportion between Simpson's sentence and the sentences received by his codefendants. That issue should have been Simpson's first proposition of law. Still, the majority opinion concludes that Simpson has not set forth "a colorable claim that his appellate counsel was ineffective in order to have his appeal reopened." Majority opinion at ¶ 21. It can only be because the second prong of *Strickland* is not satisfied—i.e., that Simpson could not have prevailed even with competent counsel—though that is not directly stated.

{¶ 34} It is clear to me, in analyzing the *Mapes* factors, that Simpson's appellate counsel was deficient. The disproportionate-sentence issue was "significant and obvious," was clearly stronger than those issues that were presented, and was not otherwise raised by appellate counsel; the decision to omit the issue was "one which only an incompetent attorney would adopt." *Mapes*, 388 F.3d at 191. Moreover, appellate counsel did not meet with Simpson or his trial counsel, did not review the case record, and did not defend her decision to omit the disproportionate-sentence issue. *See id.* I believe that Simpson was prejudiced by counsel's deficient performance, because competent advocacy could have convinced the court of appeals that the sentence imposed was excessive and disproportionate, *see State v. Hawley*, 2020-Ohio-1270, 153 N.E.3d 714 (8th Dist.) (defendant successfully argued that his sentence was disproportionate and excessive).

{¶ 35} If failure to review the record below and failure to argue the disproportion of a sentence more than six times longer than a codefendant's do not present a colorable claim of ineffective assistance, then we might never reopen a case pursuant to App.R. 26(B). Of the 836 applications for reopening that this court has received in the last ten years, zero have been granted. We must ask ourselves whether we are providing meaningful review or just a mirage. I dissent.

STEWART, J., concurs in the foregoing opinion.

––––––––––––––––

Michael T. Gmoser, Butler County Prosecuting Attorney, and John C. Heinkel, Assistant Prosecuting Attorney, for appellee.

Repper-Pagan Law, Ltd., and Christopher J. Pagan, for appellant.

Dave Yost, Attorney General, Benjamin M. Flowers, Solicitor General, and Michael J. Hendershot, Chief Deputy Solicitor General, urging affirmance for amicus curiae Ohio Attorney General.

Timothy Young, Ohio Public Defender, and Patrick T. Clark, Charlyn Bohland, and Rachel Troutman, Assistant Public Defenders, urging reversal for amicus curiae Office of the Ohio Public Defender.

_____