[Cite as *State v. Carver*, 2023-Ohio-2839.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

STATE OF OHIO,                          :

                                  :        Case No. 19CA17

        Plaintiff-Appellee,          :

                                  :

        v.                            :        <u>DECISION AND</u>
                                  :        <u>JUDGMENT ENTRY</u>
JAMES E. CARVER,                        :        <u>ON REOPENED APPEAL</u>

                                  :

        Defendant-Appellant.         :        **RELEASED 8/07/2023**

<u>APPEARANCES</u>:

Steven H. Eckstein, Washington Court House, Ohio, for Appellant.

Anneka P. Collins, Highland County Prosecutor, Adam J. King, Highland County Assistant Prosecutor, Hillsboro, Ohio, for Appellee.

Smith, P.J.

{¶1} In 2019, a jury found James E. Carver guilty of Murder, R.C. 2903.02(A), and Rape, R.C. 2907.02, felonies of the first degree. We affirmed his convictions in his direct appeal, *State v. Carver,* 2020-Ohio-4984, 160 N.E.3d 746 (4th Dist.).[1] Carver's petition for postconviction relief was denied in 2022.

{¶2} However, on November 8, 2021, this court granted in part Carver's App.R. 26(B) motion to reopen his appeal based on ineffective assistance of

---

[1]The facts underlying Appellant's convictions for murder and rape are set forth fully in the direct appeal at Paragraphs 2-49. Subsequently the Supreme Court declined jurisdiction of the direct appeal in 2021.

appellate counsel.  We found Carver raised a colorable claim of ineffective assistance of appellate counsel due to counsel's failure in the direct appeal to challenge trial counsel's performance for failure to object to improper jury instructions.  This matter comes before us on Carver's reopened appeal.  Carver assigns the following error for review:

> THE TRIAL COURT ERRED, IN VIOLATION OF THE DEFENDANT-APPELLANT'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL, BY GIVING ERRONEOUS, CONFLICTING, AND MISLEADING JURY INSTRUCTIONS CONCERNING THE REQUIRED MENTAL STATE FOR THE OFFENSE OF MURDER.

{¶3} In Carver's reopened appeal, while he has addressed the issue of the erroneous jury instructions in his brief, he has failed to further address the alleged ineffective assistance of appellate counsel claim.  A recent decision of the 9th District Court of Appeals in *State v. Calhoun,* 9th Dist. Summit No. 29604, 2022-Ohio-4269, has provided guidance as to whether Carver's omission is fatal to consideration of his reopened appeal.

{¶4} *Calhoun* held that because the appellant failed to address the fundamental issue of ineffective assistance of appellate counsel in his reopened appeal, the court could not reach the merits of his other arguments.  Relying on the Supreme Court of Ohio's decision in *State v. Leyh,* 166 Ohio St.3d 365, 2022-Ohio-292, 185 N.E.3d 1075, the *Calhoun* court explained that " 'App.R. 26(B) creates a special procedure for a thorough determination of a defendant's

allegations of ineffective assistance of counsel.' " *Calhoun, supra,* at ¶ 7, quoting *State v. Davis,* 119 Ohio St.3d 422, 2008-Ohio-4608, ¶ 26. The rule creates a two-stage procedure for the adjudication of ineffective assistance claims. *State v. Leyh, supra*, at ¶ 19. *See Calhoun, supra.* In the first stage, the applicant must apply for reopening of the appeal as set forth in App.R. 26(B). *Leyh,* at ¶ 20.      " 'The first stage involves a threshold showing for obtaining permission to file new appellate briefs.' " *Id.* at ¶ 19, quoting 1993 Staff Notes, App.R. 26. At this stage, an appellant must demonstrate that there is a " ' "genuine issue" as to whether he has a "colorable claim" of ineffective assistance of counsel on appeal.' " *State v. Simpson,* 164 Ohio St.3d 102, 2020-Ohio-6719, ¶ 12, quoting *State v. Spivey,* 84 Ohio St.3d 24, 25 (1998). When an application for reopening is granted, it proceeds to the second stage, where "[t]he case is then treated as if it were an initial direct appeal, with briefs and oral argument." *Simpson* at ¶ 13.

{¶5} *Calhoun* further explained that during the second stage of the procedure, an appellate court must determine whether "the performance of appellate counsel was deficient and the applicant was prejudiced by that deficiency[.]" *Id.* at ¶ 8; App.R. 26(B)(9). *See also Leyh* at ¶ 24. "[T]he prior appellate judgment may not be altered unless the applicant established at the second stage that the direct appeal was meritorious and *failed because appellate counsel rendered ineffective assistance"* under the test set forth in *Strickland v.*

*Washington,* 466 U.S. 668, 687 (1984).  (Emphasis added.)  *Leyh* at ¶ 24.

Summarizing this procedure, the *Leyh* court observed:

> Thus, the two-stage procedure prescribed by App.R. 26(B) requires that the applicant seeking permission to reopen his direct appeal show at the first stage that there is at least a genuine issue—that is, legitimate grounds—to support the claim that the applicant was deprived of the effective assistance of counsel on appeal. See App.R. 26(B)(5). If that showing is made and the application is granted, *the applicant must then establish at the second stage the merits of both the direct appeal and the claim of ineffective assistance of appellate counsel.*

*Id*. at ¶ 25; *See* App.R. 26(B)(9).  *See also Calhoun,* at ¶ 24, and *State v. Osborne,* 9th Dist. Lorain No. 17CA011208, 2022-Ohio-734.

{¶6} The *Calhoun* court concluded that it must apply the language of App.R. 26(B)(9) as written.  Calhoun had been ordered to file an appellate brief that addressed whether prior appellate counsel was ineffective.  While his brief set forth four assignments of error, he neglected to address the issue of ineffective assistance of appellate counsel.  The court further concluded that when an appellant fails to address ineffective assistance of appellate counsel in a brief filed in a reopened appeal, the prior judgment must be confirmed.  *Id*. at ¶ 10.

{¶7} In the reopened appeal brief, Carver sets forth a sole assignment of error regarding the erroneous jury instructions but fails to address the issue of any alleged ineffective assistance of appellate counsel.  In the Entry on Application to Reopen Appeal, we stated at Paragraph 35:

We find possible merit to this argument Appellant has set forth within the second assignment of error. We further find Appellant has raised a *colorable* claim of ineffective assistance of appellate counsel and has provided a legitimate reason for this court to reopen his appeal. The case shall proceed as on initial appeal *according to the appellate rules* and our review shall be limited to considering the matter of the erroneous jury instructions given as to Count One, murder.

(Emphasis added.)

{¶8} This court granted Carver's application to reopen on November 8, 2021. The Supreme Court's decision in *Leyh,* clarifying App. R. 26(B), was entered February 8, 2022. Carver's brief in the reopened appeal was filed August 3, 2022. We are persuaded by the reasoning set forth in *Calhoun*, and we conclude that pursuant to the appellate rules, Carver's appeal must be dismissed for failure to address the ineffective assistance of appellate counsel claim. Therefore, the judgment in direct appeal must be confirmed.

{¶9} Nevertheless, " [c]ourts, including this one, always endeavor to decide cases 'on their merits whenever possible.' " *McCann v. Webb,* 4th Dist. Adams No. 21CA1128, 2022-Ohio-2318, at ¶ 5, quoting *Keaton v. Purchase Plus Buyers Grp., Inc.,* 145 Ohio App.3d 796, 804, 2001-Ohio-2569, 764 N.E.2d 1043 (4th Dist.), citing *Perotti v. Ferguson,* 7 Ohio St.3d 1, 3, 454 N.E.2d 951 (1983). Even if we were to consider Carver's sole assignment of error, we would find it to be wholly without merit. "A trial court must not fail to 'fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the

evidence and discharge its duty as the fact finder.' " *State v. Bradford,* 4th Dist. Adams No. 11CA928, 2013-Ohio-480, at ¶ 21, quoting *State v. Comen,* 50 Ohio St.3d 206, 553 N.E.2d 640 (1990), paragraph two of the syllabus. " ' "In examining errors in a jury instruction, a reviewing court must consider the jury charge as a whole and must determine whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights." ' " *Bradford,* at ¶ 22, quoting *Kokitka v. Ford Motor Co.,* 73 Ohio St.3d 89, 93, 652 N.E.2d 671 (1995), quoting *Becker v. Lake Cty. Mem. Hosp. W.,* 53 Ohio St.3d 202, 208, 560 N.E.2d 165 (1990). Jury instructions must be considered in their entirety, not in isolation. *See State v. Trzeciak,* 12th Dist. Brown No. CA2014-06-010, 2015-Ohio-2219, at ¶ 10, (internal citations omitted). Whether the jury instructions correctly state the law is a question of law which is reviewed de novo. *See State v. Neptune*, 4th Dist. No. 99CA25, 2000 WL 502830 (Apr. 21, 2000).

{¶10} The pertinent subsection of Murder, R.C. 2903.02(A), an unclassified felony, provides that, "[N]o person shall purposely cause the death of another * * *." R.C. 2901.22(A) defines "purposeful" conduct as:

> [a] person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature.

R.C. 2903.04, reckless homicide, provides that, "[n]o person shall recklessly cause the death of another." R.C. 2901.22(C) defines "reckless conduct" as:

> [a]person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to the circumstances when, with heedless indifference to the consequences, the person disregards a substantial and justifiable risk that such circumstances are likely to exist.

{¶11} Carver's identity as shooter was never in question at trial. The defense strategy was to argue that although Carver was responsible for shooting Heather Camp, he did not act with specific intent to harm her—his actions were not purposeful but reckless. On day four of Carver's trial, the jurors were specifically instructed:

> [I]f you find the defendant not guilty of murder; or, if you can't agree on a verdict as to Count One, then you will consider the included offense of reckless homicide in Count One.

{¶12} What is problematic is that the trial court also incorrectly read the mens rea to Count One, murder, substituting "knowingly" instead of "purposely" twice. This error was repeated in the written copy of the jury instructions which the jurors took with them into the jury room as they deliberated. R.C. 2901.22(B) defines "knowing" conduct as:

> [a] person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person

has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

{¶13} The State of Ohio has conceded, substituting "knowing" for "purposely" was error. Carver's contention is that the erroneous instructions were conflicting, and misleading, resulting in an unfair trial. However, Carver, through counsel, failed to object to the error. Because trial counsel failed to object, on direct appeal this error would have been reviewed under the plain error standard of review to determine whether Carver's substantial rights were affected. *See* Crim.R. 52(B). Thus, we would also review for plain error.

{¶14} An error affects substantial rights when " 'but for the error, the outcome of the trial [proceeding] clearly would have been otherwise.' " *State v. Litreal,* 170 Ohio App.3d 670, 2006-Ohio-5416, 868 N.E.2d 1018, ¶ 11; quoting *State v. Barnes,* 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240. *See also State v. Jackson*, 57 Ohio St.3d 29, 41, 565 N.E.2d 549 (1991). Courts ordinarily should take notice of plain error "with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, ¶ 78; *State v. Patterson,* 4th Dist. No. 05CA16, 2006-Ohio-1902, ¶ 13. A reviewing court

should consider noticing plain error only if the error " ' "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." ' " *Barnes* at 27, 759 N.E.2d 1240; quoting *United States v. Olano,* 507 U.S. 725, 736, 113 S.Ct. 1770 (1993); quoting *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391 (1936).  Therefore, we must determine whether the jury instructions were confusing or misleading so as to have materially affected Carver's substantial rights to a fair trial.  We can only reverse Carver's conviction based on the trial court's error if the result clearly would have been otherwise had the proper instruction been given.  *State v. Pettit*, 4th Dist. Vinton No. 99CA529, 2000 WL 897993, (July 5, 2000), at *4, citing *Jackson, supra,* at 41, 565b N.E.2d 549.

{¶15} In our decision on Carver's application to reopen, we cited *State v. Baltzer,* 4th Dist. Washington No. 06CA76, 2007-Ohio-6719, wherein this court concluded  that "[g]iven Balzter's conviction for breaking and entering could have been based on the jury's belief that Baltzer acted 'knowingly' rather than 'purposely,' we cannot say with any sense of confidence that the erroneous and conflicting jury instruction did not affect the outcome of the trial." *Id*. at ¶ 31.  In granting Carver's application, we found possible merit to his similar argument. We opined:  "The jury may have believed that they could consider whether Appellant's conduct was 'knowing' as opposed to limiting their consideration to only 'purposeful' or 'reckless.' " Entry on Application to Reopen Appeal at ¶ 34.

Upon further consideration, however, we find that the error in *Baltzer* may be distinguished from the trial court's error here.

{¶16} Baltzer was convicted of one count of breaking and entering and one count of vandalism under a theory of complicity. His convictions stemmed from an incident where he and three other students broke into school and caused extensive damage to school property. Like Carver, Baltzer's culpable mental state was his entire defense.

{¶17} Baltzer admitted that he entered the school with others with the intent to toilet paper the gym but had no intent to cause serious physical harm to school property. Baltzer contended his trial counsel was ineffective because she failed to object to the trial court's erroneous initial jury instruction concerning the necessary mental state for the offense of complicity to breaking and entering, which indicated the mens rea element was "knowingly" rather than "purposely."

{¶18} In *Baltzer,* we explained that in order to establish complicity to a crime, the state must establish that the accused acted with the culpability required for the commission of the underlying offense. R.C. 2923.03. The offense of breaking and entering requires a culpable mental state of "purposely." R.C. 2911.13(A). The offense of vandalism requires a culpable mental state of "knowingly." R.C. 2909.05(B)(2). The *Baltzer* trial court initially gave the jury the following instruction on complicity:

> Complicity. It is the theory of the State that the Defendant acted in concert with others in the commission of an offense. When persons knowingly join together to commit an offense, and the offense is actually committed, each person is guilty of all of the acts performed by all of the persons, the same as each-as each-the same as if each had committed each act personally. Such persons are said to have aided and abetted each other. This means they supported, assisted, encouraged, cooperated with, advised, or incited each other in the commission of an offense.
> The State must prove that the Defendant knowingly aided and abetted others in the commission of each offense, in order for the Defendant to be responsible for the acts of the others involved in that offense.

*Id*. at ¶ 23.

{¶19} After its initial instruction on complicity, the trial court instructed the jury on the elements of the underlying offense of breaking and entering. Within its instruction, the trial court properly defined the necessary culpable mental state of "purposely." The court then gave the jury the following instruction on the law of complicity concerning the offense of breaking and entering:

> Now, having said that, I need to go back and talk to you again about complicity. In order to be complicit in the offense of breaking and entering, it's necessary that the State prove that the Defendant acted not only knowingly with the others, but purposely as well. And you should remember that when you're deciding whether the Defendant was complicit in the offense of breaking and entering.
> The purpose with which a person does an act is determined from the manner in which it is done, the means used, and all the other facts and circumstances in evidence. It must be established there was present in the mind of the Defendant the specific intention to commit the offense of vandalism.

*Id*. at ¶ 24. Next, the court instructed the jury on the underlying

offense of vandalism and properly defined the necessary culpable mental state of "knowingly."  *Id*. at ¶ 25.

{¶20} Baltzer claimed that the trial court erred when it initially instructed the jury that the state must prove that Baltzer "knowingly" aided and abetted others in the commission of "each offense," in order for him to be responsible for the acts of the others involved in that offense.  *Id*. at ¶ 26.  He claimed the instruction was erroneous because in order to prove complicity to the offense of breaking and entering, the state must show the defendant acted with the required mental state of *purposely, not knowingly.*  While the trial court later instructed the jury on the necessary mental state for the offense of complicity to breaking and entering, Baltzer claimed the court's subsequent instruction did not explain the initial instruction and did not remedy the erroneous instruction.

{¶21} Baltzer argued counsel's failure to object to the erroneous jury instruction relieved the state of its burden to prove each element of the offense beyond a reasonable doubt because there was no way of knowing which of the two irreconcilable instructions the jurors applied in reaching their verdict.  *See Francis v. Franklin* (1985), 471 U.S. 307, 322, 105 S.Ct. 1965.  ("Language that merely contradicts and does not explain a constitutionally infirm instruction will not suffice to absolve the infirmity.  A reviewing court has no way of knowing which of the two irreconcilable instructions the jurors applied in reaching their verdict.").

*See Baltzer,* at ¶ 27.  We concluded:

> Viewing the jury instructions in their entirety, we conclude they are internally inconsistent, and potentially misleading concerning the proper mental state for the offense of complicity to breaking and entering. The trial court's initial instruction on the general law of complicity states that the state must prove that Baltzer "knowingly aided or abetted" the others in the commission of each offense. The trial court's reference to "knowingly" does not appear to be a reference to the culpable mental state required for the underlying offenses, but rather to that of aiding and abetting itself, i.e., that Baltzer "knowingly" supported, assisted, encouraged, cooperated with, advised, or incited the others in the commission of the crime. However, this instruction is erroneous because in order to establish complicity to a crime, the state must establish that the accused acted with the culpability required for the commission of the underlying offense. This means that the state was required to prove that Baltzer "purposely aided and abetted" the others in breaking and entering the school. The trial court's general instruction on the law of complicity was erroneous.

*Id.* at ¶ 28.

{¶22} We pause to note that [s]pecific intent crimes are those that have a mens rea of "knowingly" or "purposely." *See State v. Neville,* 7th Dist. Noble No. 235, 1998 WL 811357, *7, *see also State v. Snowden,* 7 Ohio App.3d 358, 363, 455 N.E.2d 1058 (1982); *State v. Hubbard,* 10th Dist. Franklin No. 11AP-945, 2013-Ohio-2735, at ¶ 64.  Furthermore, " '[r]ecklessness' involves an even lower mental state than 'knowingly' and 'does not involve a specific intent.' " *State v. Parrett,* 12th Dist. Fayette No. CA2014-02-002, at ¶18,  quoting *State v. Bryant,* 12th Dist. Warren No.

CA2007-02-024, 2008-Ohio-3078, ¶ 13.  "Recklessness" was not part of

Baltzer's defense, but it was Carver's only defense.

{¶23} Another case we have found instructive is *State v. Remillard,* 5th

Dist. Knox No. 18CA116, 2019-Ohio-3545.  Remillard appealed his conviction of

one count of murder in violation of R.C. 2903.02(A), an unclassified felony with a

firearm specification of R.C. 2941.145.  The parties presented the case to the jury

arguing the only disputed issue was whether Remillard had acted with purpose to

kill his victim.  Remillard, like Carver, contended the firing of the weapon was

accidental and that he had no purpose to kill.

{¶24} In the direct appeal, Remillard argued that his trial counsel was

ineffective for failing to object to an erroneous definition of murder read into the

record by the trial court.  The trial court included a reference to "purpose to inflict

bodily harm" that is not a part of the definition of murder within jury instructions.

The appellate court noted that the error occurred only at one location in the record.

The record on appeal did not contain a copy of the instructions or whether the

written instructions were taken by the jury into the jury room.  The appellate court

considered whether the single error prejudiced Remillard.

{¶25} The Fifth District court was not convinced that the inclusion of the

incorrect reference to physical harm was so misleading and prejudicial as to result

in an erroneous verdict.  Importantly, though, the court noted that it need only

consider whether trial counsel's failure to object to the instruction constituted ineffective assistance. The Fifth District court reasoned that considering the weight of the evidence against Remillard and the trial strategy of attacking the issue of mens rea, trial counsel could reasonably have concluded that objecting to the instruction would distract from his argument. The Fifth District declined to second-guess the strategic decision Remillard's counsel made.

{¶26} *Remillard,* while helpful, did not involve the same type of instructional mistake as in Carver, because while erroneous, the instruction did not involve mens rea. However, *Remillard* did acknowledge that Remillard's counsel's failure to object may be viewed as reasonable trial strategy. Further, the appellate court in *Remillard* pointed out that it, ultimately, was tasked with deciding whether trial counsel's failure to object constituted ineffective assistance.

{¶27} An older case, *State v. Lewis,* 8th Dist. Cuyahoga No. 43987, 1982 WL 352, also provides guidance. Lewis was indicted on two counts, aggravated robbery and aggravated murder, and convicted by a jury on both counts. The trial court committed error in its instructions regarding the culpable mental state for the offense of aggravated murder. On appeal, Lewis set forth the following assignment of error:

> THE DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT DID NOT DEFINE "PURPOSELY" FOR THE JURY BUT HELD THAT IT MEANT THE SAME AS "KNOWINGLY."

{¶28} At trial, when Lewis's counsel objected to an instruction on "knowledge" in place of "purposefulness," this exchange took place:

> [Defense counsel]:   As far as what the elements of aggravated murder are, I believe the Court instructed them that knowingly being the mental status of purposely-

> The Court:            It means the same as purposely.

Citing R.C. 2901.22(A), the appellate court noted that "purposefully" means "with specific intent."

{¶29} The 8th District appellate court found that Lewis's assigned error had no merit.  The court wrote:

> Technically, the trial court erred in defining "purpose" and "knowledge" as equivalents under R.C. 2901.22.  However, in view of the facts in this case, the concepts coalesce in such fashion that the jury could not have been misled.  The state's evidence was that appellant fired his gun at the victim's chest from a distance of less than six inches, during the commission of a robbery.  The appellant's evidence was that he was not even present when the crime occurred.  There is no reasonable construction of the evidence which would permit an inference that appellant knowingly, but not purposely, killed [the victim].  Consequently, the jury could not have  lost its way; we find that the error of the court was harmless, beyond a reasonable doubt.

{¶30} Based on our review of the evidence received at Carver's trial, we also find that despite the erroneous instruction, the jury could not have been

misled.[2] While the concepts of "knowing" and "purposeful" mental states would be confusing in certain contexts, they are both concepts which identify specific intent crimes. In the context of Carver's trial, the arguments made by both the prosecutor and the defense attorney in their summations of the evidence drew a stark contrast between intentional conduct and reckless conduct.

{¶31} In *Pettit, supra,* this court agreed that the trial court erred in defining "purposely." In *Pettit*, the appellant did not dispute that she intended to strike her husband, who was riding on a lawnmower, with her vehicle. She argued however, that she only intended to stop him, but did not intend to cause his death. This court noted, however, that while the jury's finding that appellant intended to cause the victim's death in light of the erroneous jury instructions was questionable, there was evidence to support the finding of an intent to kill. Therefore, relying on *Jackson,* supra, this court could not say that the jury result clearly would have been different, had the proper jury instructions been given.

{¶32} Here, the overwhelming evidence presented at trial suggested Carver's conduct was intentional and purposeful, not reckless.[3] The evidence presented at trial demonstrated Carver and Heather Camp had what many would

---

[2]In our decision in the reopening, we also noted the trial transcript was replete with instances in which the trial court properly listed the elements of murder and properly included "purposely. Additionally, although not evidence, the prosecutor and defense counsel both used "purpose" in their arguments to the jury.
[3]We summarize the evidence at this juncture because, as indicated above, it has been set forth fully in *Carver I* at Paragraphs 2-49.

describe as a "toxic" romantic relationship. Carver had a criminal history for domestic violence. After Carver was taken into custody, he indicated in his interview with Detective Antinore that on February 17, 2019, Heather and he argued over someone named Mike Scholler. Additional evidence gleaned from the interview indicated that Carver was upset by Heather's relationships with "Tyler," "an ex-boyfriend," and Mike Scholler. It can reasonably be inferred that jealousy and anger towards Heather was Carver's motivation for the shooting.

{¶33} The evidence also demonstrated that on Sunday, February 17, 2019, Carver followed Heather and Tyler Lawrence in Carver's Chevy Trailblazer and the pair drove faster to avoid Carver. That same day, Carver texted Roy Dunihue and asked to borrow a gun. Dunihue testified he provided Carver a loaded gun in a holster, with the safety on. When he gave it to Carver, Heather Camp was sitting in the front seat of Carver's vehicle.

{¶34} After Heather was shot in the chest at close range in Carver's Trailblazer on or about February 17, 2019, Carver spent the next day and a half without seeking medical attention for her. Medical and coroner's personnel, along with the others who ultimately viewed Heather Camp's body, consistently described her as having extensive head, facial and torso injuries, indicative of a severe beating, in addition to the close-range gunshot wound to her torso.

{¶35} When Carver was interviewed by Detective Antinore, he related several versions describing the circumstances of Heather's shooting and the circumstances which transpired the following days. While Carver consistently maintained that Heather's shooting was not purposeful but occurred as the result of a struggle with the gun, the jury apparently did not find that evidence, presented via the recorded interview, to be credible. The evidence at trial demonstrated several instances of Carver's untruthfulness about the matter. Carver lied in a text to Heather's mother Mary Camp, assuring her Heather was fine. When Carver finally took Heather to his friends' house, the Kinnisons, he lied, telling them another man shot Heather.

{¶36} Carver also lied telling the Kinnisons that Heather didn't want to go to the hospital due to outstanding warrants. Carver's lie was contradicted in a June 6, 2019 jail phone call in which Carver tells another individual that when he met Heather on the evening of the 17th, Heather intended to turn herself in on the warrants. As we stated in *Carver I* at ¶ 94, this directly undermines Carver's interview statements in which he repeated that it was Heather who did not want to seek medical treatment for fear of being taken to jail.

{¶37} Halie Kinnison testified that Heather told Mandy Jo Knisley that she did want help and that she "didn't want to die." After Knisley left the Kinnisons' home, believing that Heather was being taken to the hospital, Bobby Kinnison

overheard Carver telling Heather to "straighten up bitch," and he slapped her. Carver was described as "indifferent" and "agitated."

{¶38} Andrew McClelland, a forensic firearm examiner with BCI, testified to a reasonable degree of scientific certainty that the firearm taken into evidence was in good working order. He testified about the gun's safety mechanism. McClelland explained that if placed into the safe position, the firearm will not fire when the trigger is pulled. In order to fire, the safety must be disengaged. McClelland testified a person would have to first take the safety off and then pull the trigger to make it fire.

{¶39} The evidence showed that although Carver and Heather went through a Frisch's drive through on Monday, February 18th, passing a nearby hospital, Carver still did not seek medical attention for Heather. Through text message, Carver asked an unidentified person to remove Heather's belongings from his camper.

{¶40} Admittedly, some of the fact witnesses, namely Mandy Knisley and Bobby and Kalie Kinnison, had questionable personal backgrounds, some of which included drug use during the relevant dates they observed Carver and Heather Camp, and some of whom had criminal histories. The jury, however, was in the best position to assess witness credibility and not obligated to believe the testimony of any of the State's witnesses. The jury was instructed as to its duty to

determine credibility and obviously chose to believe the testimony of these witnesses. A trier of fact is free to believe all, part or none of the testimony from any witness who appears before the trier of fact. *State v. Malone,* 4th Dist. Lawrence No. 21CA09, 2022-Ohio-1409.

{¶41} The State argued that Carver's conduct was purposeful. Carver's defense counsel was not making an argument, as in *Baltzer*, that Carver's conduct was "purposeful," and thereby confused matters by instructing on "knowingly, " both definitions used in specific intent crimes. Rather, defense counsel argued that Carver's conduct was a lower mental state that does not involve specific intent— "reckless." As in *Lewis,* in view of the facts of Carver's case, the concepts of "knowledge" and "purpose" "coalesce in such a fashion" that the jury could not have been misled, especially when the jury was also instructed in a contrasting mental state, "recklessness."

{¶42} As in *Pettit,* had the trial court instructed correctly in the two instances discussed, we cannot say that the jury result would clearly have been different. And as in *Lewis,* given the mountain of evidence unfavorable to Carver, we cannot find that the jury lost its way. Furthermore, as in *Remillard,* trial counsel's decision not to object to the erroneous instruction may be viewed as reasonable trial strategy. Carver's defense was entirely based on the premise that Heather's shooting was accidental and Carver's conduct was reckless—without

any specific intent to harm her. Had trial counsel called attention to the error and insisted that the mental state be corrected to "purposely," it may have been construed by the jury as a concession rather than a correction.

{¶43} In sum, we do not find the trial court's erroneous jury instructions materially affected Carver's substantial rights. Thus, we cannot find plain error.

{¶44} Nevertheless, as indicated in *Remillard*, had Carver properly argued an ineffective assistance of appellate counsel claim, our determination on reopened appeal would not end here. We would be required to consider whether the failure to raise the erroneous instruction constituted ineffective assistance. While it is not our duty to root out or construct an argument for Carver, in order to fully resolve this matter as we have undertaken in the interests of justice, we do not find that appellate counsel's failure to argue the erroneous jury instructions would have constituted ineffective assistance of appellate counsel.

{¶45} The two-pronged analysis in *Strickland v. Washington,* 104 S.Ct. 2052, 466 U.S. 668, 687 (1984), is the appropriate standard to determine whether a defendant has received ineffective assistance of appellate counsel. *See State v. Mockbee*, 4th Dist. Scioto No. 14CA3601, 2015-Ohio-3469, ¶ 14; *State v. Were,* 120 Ohio St.3d 85, 2008-Ohio-5277, 896 N.E.2d 699, ¶ 10. In order to establish ineffective assistance of his original appellate counsel, Appellant must prove that his appellate counsel was deficient for failing to raise the issues he now presents

and that a reasonable probability of success exists had he presented that claim on appeal. *Id.* at ¶ 11.

{¶46} In *Strickland,* the United States Supreme Court held that a court's scrutiny of an attorney's work must be highly deferential. *See State v. Lumbus,* 8th Dist. Cuyahoga No. 102273, 2016-Ohio-5920, at ¶ 3. The *Strickland* court further stated that it is all too tempting for a defendant to second guess his attorney after conviction and that it would be too easy for a court to conclude that a specific act or omission was deficient, especially when examining the matter in hindsight. *Id*. Thus, a court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Id*. *See Strickland,* 466 U.S. 668 at 687.

{¶47} Having found trial counsel's error did not constitute error, and may have been a strategic decision, it would have been futile for appellate counsel to have raised an assignment of error regarding the erroneous jury instructions. A trial attorney does not violate any substantial duty in failing to raise futile arguments. *See State v. Mitchell,* 53 Ohio App. 3d 117, 199, 559 N.E.2d 1370; *State v. Bankson,* 8th Dist. Cuyahoga No. 92777, 2010-Ohio-1576, at ¶ 63; *State v. Dean,* 4th Dist. Ross No. 15CA3499, 2016-Ohio-5720, at ¶ 37, (J. Harsha,

concurring.)  Therefore, we further find that appellate counsel did not render ineffective assistance by failing to raise an assignment of error concerning the erroneous jury instructions which would have had no reasonable probability of success.  Had Carver properly argued the ineffective assistance issue as required by App.R. 26(B) (9), we would have found it to be without merit.  For this reason as well, we would confirm the judgment in the direct appeal.

JUDGMENT IN THE DIRECT APPEAL CONFIRMED.

# JUDGMENT ENTRY

It is ordered that the JUDGMENT IN THE DIRECT APPEAL BE CONFIRMED and that costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. and Hess, J. concur in Judgment and Opinion.

For the Court,

_____
Jason P. Smith
Presiding Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**